IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-01036 (01) SOM |
|---|---|---|
| Plaintiff, | ) | |
| | ) | ORDER DECLINING TO RECUSE; |
| vs. | ) | ORDER DENYING MOTION FOR NEW |
| | ) | TRIAL |
| MALIA ARCIERO (01), | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DECLINING TO RECUSE; ORDER DENYING MOTION FOR NEW TRIAL**

**I.      INTRODUCTION.**

On January 8, 2015, after six days of trial before a jury, Defendant Malia Arciero was convicted of drug-related crimes. See Verdict, ECF No. 249.

On January 26, 2015, Arciero filed the present motion for a new trial pursuant to Rule 33 of the Federal Rules of Criminal Procedure, alleging prosecutorial misconduct and repeating arguments made in her earlier motion for mistrial, which the court had denied. Arciero argues that, during the Government's rebuttal closing, Government counsel not only quoted an iMessage purportedly sent by Arciero stating, "Rt on girl.... U goin make sumtin 2 ya???" but also stated, "In other words, both of us are going to be profiting from this one-pound transaction." Arciero says that the "In other words" statement was wrongfully presented in a manner suggesting that it was part of Arciero's message, not counsel's interpretation of what Arciero meant.

On February 25, 2015, counsel for Arciero filed a "Declaration of Defendant Malia Arciero's Counsel Disqualifying the Honorable Susan Oki Mollway." This declaration argues that the trial judge should be disqualified from deciding the motion for new trial. Citing 28 U.S.C. § 455(a), Arciero complains that the trial judge met with the jurors outside of counsel's presence after the return of the verdict. The declaration seeks disqualification based on the possibility that the jurors said something that might affect the court's decision on Arciero's Rule 33 motion.

In its post-verdict meeting with the jurors, this court did not discuss any specific trial evidence. The court certainly did not discuss the iMessage at issue in Arciero's Rule 33 motion. There is therefore no reason that this judge should disqualify herself. Moreover, because there was overwhelming evidence of guilt presented at trial, there was no possibility that the jury confused the message in evidence with the Government's explanation of its meaning. This judge therefore denies the motion for new trial.

**II.     BACKGROUND.**

In the trial of this drug case, the Government called in its case in chief Joleen Wood, who testified about methamphetamine transactions with Defendant Malia Arciero. Wood testified about Exhibit 405, which contained iMessages between

Wood and Arciero. Wood testified that the cellular telephone number of the phone sending these messages was Arciero's; this was corroborated by the name at the top of the message screen, "maliaelena" (which was cut short for lack of space on the telephone screen but which, in its entirety, according to Wood, included "arciero"). See Ex. 405.

Wood testified that, on April 30, 2013, she received a message from Malia Arciero (not from Malia's sister Keala Arciero). This message, part of Exhibit 405, stated, "Hey girl... Gotta talk,2 u ASAP ok... Remember that thing we talked about.... Can 4 19." Wood testified that this message was a response to Wood's inquiry about a multi-pound methamphetamine sale and that Arciero was telling Wood that Arciero could supply Wood with 4 pounds of methamphetamine for the price of $19,000 per pound. Wood testified that this was part of a deal in which Wood was supposedly acting as the middleman for the ultimate buyer. Ultimately, Wood told Arciero that she wanted only a pound of methamphetamine.

Later that evening, Special Agent Ryan Faulker, posing in messages as Wood after Wood was arrested, sent Arciero a message asking about the deal, "So what's up? How long more? Da guy not going wait dat long. He going split." See Ex. 405. Arciero agreed to deliver the methamphetamine to Wood's apartment. Faulker, posing as Wood, sent Arciero a message

3

stating, "My side ready and waiting." Id. He then sent another message addressing the currency to pay for the methamphetamine, "I Neva count yet but look solid." Id. Arciero responded, "Try make sure it's all there pleaseeee jus 2 make sure ok... Whose gpin b at ur house??" Id. Faulker, again posing as Wood, responded that Wood was at the house and that the money had been counted (i.e., that there was $20,000). Id.

Arciero then sent a message that stated, "Rt on girl.... U goin mke sumthin 2 ya???" Id. Faulker, posing as Wood, responded, "Automatic". Id. Arciero then sent a message stating, "Guddd.... Ok so come by ur spot?"

A little while later, Arciero sent Wood a message asking who was at Wood's apartment. The response was that only Wood was there. Arciero then sent a message stating, "I goin come up alone but kk gpin stay down da rd with da dog."

Arciero and her sister, Keala, aka KK, were arrested when their car drove into the parking lot of Wood's apartment. Methamphetamine was found in the car.

Arciero later signed a confession.

In the Government's rebuttal closing, the attorney for the Government stated to the jury:

> And the one thing that's important about defendant's own statement, it surely shows she was a methamphetamine trafficker in her own right.
>
> No entrapment.

> And again – again what defense did not want to talk to you about, in the text messages that they talk about inferences, when you think about how was she –- was she entrapped, remember these are the incoming text messages she sends on the night of April 30:
>
> "Try to make sure it's all there, please." That is to say, the money.
>
> Ryan Faulker, playing the role of Joleen Wood sends back, "Counting now. Looks good."
>
> Response from Malia, "Yea."
>
> And right after that Malia's thinking about her partner in this methamphetamine trafficking crime. Okay. She wants to make sure her partner is taken care of, too, Joleen Wood; so she texts, "Right on girl. You going to make something, too, yeah?" In other words, both of use are going to be profiting from this one-pound transaction.

Partial Transcript of Proceedings, Jan. 7, 2015, ECF No. 257-2, PageID # 1680.

The jury began deliberating at 3:45 on January 7, 2015. See ECF No. 245. At 1:30 p.m. the following day, January 8, 2015, the jury notified the court that the jury had reached a verdict. The verdict convicting Arciero of all counts was received shortly thereafter. See ECF Nos. 248 and 249.

After receiving the verdict, the court invited members of the jury to chambers. This is not unusual in this district and allows the court to receive feedback from the jury on how the court can improve the jury experience. Jurors may ask questions of the court during these meetings. When a jury has found a

5

defendant guilty, jurors frequently ask when the defendant will be sentenced and what the minimum or maximum sentence might be. Arciero's jury did not discuss specific items of evidence with this judge. Statements made by the Government during closing argument were not mentioned. At most, there was a reference to Arciero's closing argument. Specifically, there was a reference to a bench conference during Arciero's closing that her counsel appeared reluctant to join. The specific message at issue in Arciero's Rule 33 motion was not discussed at all.

**III.      THIS JUDGE DECLINES TO DISQUALIFY HERSELF.**

Arciero's filing of February 24, 2015, does not assert that this court is actually biased. Instead, Arciero argues that, under of 28 U.S.C. § 455(a), this judge should disqualify herself because of an appearance of impartiality. <u>See</u> ECF No. 257, PageID # 1710. This judge declines to disqualify herself.

As an initial matter, this court must determine whether Arciero seeks disqualification under 28 U.S.C. § 144 or § 455(a). Section 144 provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

Section 455(a), on the other hand, states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself

6

in any proceeding in which his impartiality might reasonably be questioned."

Arciero is not arguing that this court is biased or prejudiced against her. Instead, she is arguing that this judge may not be impartial given post-trial communications with the jury outside of Arciero's presence. Arciero expressly says that she seeks disqualification under § 455(a).

In the absence of legitimate reasons to recuse themselves, judges should adjudicate the cases assigned to them. See United States v. Holland, 519 F.3d 909, 912 (9th Cir. 2008). However, under § 455(a), a judge must disqualify himself or herself in any proceeding in which his or her impartiality might reasonably be questioned, when the judge has a personal bias or prejudice concerning a party, or when the judge has personal knowledge of disputed evidentiary facts concerning the proceeding. 28 U.S.C. § 455; see also Holland, 519 F.3d at 912; Hamid v. Price Waterhouse, 51 F.3d 1411, 1416 (9th Cir. 1995) ("The test for recusal in this circuit is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." (quotation and citation omitted)). When a motion to recuse is sought based on § 455, "the motion is addressed to, and must be decided by, the very judge whose impartiality is being questioned." In re Bernard, 31 F.3d 842, 843 (9th Cir. 1994).

A motion to recuse is "necessarily fact-driven," and involves both an objective and subjective analysis. Holland, 519 F.3d at 914. First, this judge examines whether "a reasonable third-party observer would perceive that there is a 'significant risk' that the judge will be influenced . . . on a basis other than the merits." Id. The reasonable third-party observer refers to someone who understands all the relevant facts and has examined the record and law. Id. Second, the judge examines his or her subjective feelings and must recuse when the judge feels that he or she cannot preside over the case without bias. Id. at 915. Here, neither the objective nor subjective analysis requires recusal.

Objectively, no reasonable person with knowledge of the facts and law would deem there to be a significant risk that this judge would be influenced on a basis other than the merits. Overwhelming evidence of Arciero's guilt was presented at trial. As discussed below, Arciero claims prosecutorial misconduct by the Government's attorney in his rebuttal closing. But the iMessages between Arciero and Wood/Faulker were contained in Exhibit 405, which was displayed to the jury multiple times during the trial and in the Government's original closing argument. The jury also had a copy of the messages in the exhibits that were taken to the jury deliberation room. It was

8

therefore difficult indeed to trick the jury into thinking the messages stated something they did not actually state.

In the rebuttal closing, the Government's attorney quoted the message that stated, "Right on, girl. You going make something, too, yeah." See ECF No. 257-2, PageId # 1680. He then explained the message, stating, "In other words, both of us are going to be profiting from this one-pound transaction." Arciero argues that the "In other words" language was presented as if it were part of the quoted message. Arciero says this court may have discussed that very matter with the jury.

This judge was present during the Government's rebuttal closing. This judge listened to the prosecutor quote the message and then put his own spin on what the quoted language meant. No reasonable person listening to those statements would have thought that the prosecutor was attempting to convey the notion that the words "In other words, both of us are going to be profiting from this one-pound transaction" were written by Arciero. Arciero's actual messages were more colloquial and used common text messaging abbreviations. The jury had seen the actual messages. Under these circumstances, no reasonable person would question this judge's impartiality even had the jury discussed the message in question in the post-trial meeting. As it happened, there was no mention of the message during that meeting. Arciero's argument that there is an appearance of

impropriety just because she does not know what this judge may have discussed with the jury simply does not raise an issue about this judge's impartiality with respect to Arciero's motion for new trial.

The circumstances here do not warrant recusal.  The jury did not discuss the message or anything pertinent to Arciero's motion.  Accordingly, when the court examines the facts subjectively, the court finds no reason for recusal.

**IV.     THE MOTION FOR NEW TRIAL IS DENIED.**

Having determined that disqualification is not warranted, the court turns to the merits of Arciero's motion for new trial, brought under Rule 33 of the Federal Rules of Criminal Procedure.

Rule 33(a) provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.  If the case was tried without a jury, the court may take additional testimony and enter a new judgment."  The burden of justifying a new trial rests with the moving party, see United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989), and a "motion for new trial is directed to the discretion of the judge." United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981); accord United States v. Mack, 362 F.3d 597, 600 (9th Cir. 2004) (reviewing the denial of a motion for new trial under Rule 33(a) under an abuse of discretion

standard).  A district court's power to grant motions for a new trial is much broader than its power to grant motions for judgment of acquittal, United States v. Alston, 974 F.2d 1206, 1211 (9th Cir. 1992), as new trials may be granted when the "interest of justice so requires."  Fed. R. Crim. P. 33(a).

Arciero contends that the prosecutor engaged in prosecutorial misconduct that violated her due process rights. In examining that contention, this court examines whether the prosecutor's comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process."  See Darden v. Wainwright, 477 U.S. 168, 180 (1986) (quotation marks and citation omitted).  Arciero has the burden of demonstrating that the alleged misconduct more probably than not affected the verdict.  United States v. Peterson, 140 F.3d 819, 821 (9th Cir. 1998).  Moreover, because Arciero did not object when the prosecutor made his closing argument, Arciero must show plain error on appeal.  See United States v. Henderson, 241 F.3d 638, 652 (9th Cir. 2000).

The Ninth Circuit has explained that, when a defendant asserts prosecutorial misconduct, "'the issue is whether, considered in the context of the entire trial, that conduct appears likely to have affected the jury's discharge of its duty to judge the evidence fairly.'"  Henderson, 241 F.3d at 652 (quoting United States v. Frederick, 78 F.3d 1370, 1379 (9th

11

Cir. 1996)). "Examples of prosecutorial misconduct include manipulating and misstating the evidence." United States v. Atcheson, 94 F.3d 1237, 1244 (9th Cir. 1996). Arciero fails to make the required showing. "It [was] not misconduct for the prosecutor to argue reasonable inferences based on the record." Id. Here, Arciero claims that the prosecutor misrepresented the evidence when he stated, "In other words, both of us are going to be profiting from this one-pound transaction."

There is no dispute that the evidence did not actually include the words, "In other words, both of us are going to be profiting from this one-pound transaction." That statement was made immediately after the prosecutor quoted a message stating, "Right on, girl. You going make something, too, yeah." See ECF No. 257-2, PageId # 1680. The use of "In other words" signaled to the jury that the prosecutor was explaining what was meant by the actual message. The prosecutor's statement that the message was a reference to Arciero's expectation that both Arciero and Wood would profit from the one-pound sale of methamphetamine was a reasonable inference from the message. No prosecutorial misconduct occurred based on the prosecutor's explanation of the message. Certainly, the jury's verdict was supported by overwhelming evidence of Arciero's guilt.

12

The court is not persuaded by Arciero's incorporation by reference of her motion for mistrial, without more.  That motion was not persuasive when made.  It is not persuasive now.

**V.    CONCLUSION.**

For the foregoing reasons, this judge declines to recuse herself and denies Arciero's motion for a new trial.



IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 10, 2015.


    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge


United States of America v. Arciero, Crim. No. 13-01036 SOM (01); ORDER DECLINING TO RECUSE; ORDER DENYING MOTION FOR NEW TRIAL