IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-01036 (01) SOM |
| | ) | CIV. NO. 18-00090 SOM |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER DENYING DEFENDANT MALIA |
| | ) | ARCIERO'S MOTION UNDER 28 |
| MALIA ARCIERO (01), | ) | U.S.C. § 2255 AND DECLINING |
| | ) | TO ISSUE A CERTIFICATE OF |
| Defendant. | ) | APPEALABILITY |
| _____ | ) | |

**ORDER DENYING DEFENDANT MALIA ARCIERO'S MOTION UNDER 28 U.S.C.
§ 2255 AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

I.      **INTRODUCTION.**

This motion brought under 28 U.S.C. § 2255 springs from
the unfortunate pairing of (1) a defendant who decided to
manufacture allegations that a federal agent had sexually
assaulted her with (2) a defense attorney predisposed to believe
her assertions of government misconduct.  Defendant Malia Arciero
now says that her trial attorney, Gary Dubin, provided
ineffective assistance of counsel.  Whatever deficiencies might
be identified in Dubin's performance, they had their
underpinnings in his acceptance of his client's lies.  While
couching her argument in the language of ineffective assistance,
Arciero is essentially faulting her attorney for having believed
her lies.  That is not a sound basis for an ineffective
assistance claim.  Arciero moreover fails to show that she was
prejudiced by Dubin's performance.  Her motion is therefore

denied.  The court also declines to issue her a certificate of appealability.

**II.       PROCEDURAL HISTORY.**

On January 8, 2015, after a six-day jury trial during which Arciero was represented by Dubin, Arciero was convicted of four drug-related crimes.  *See* Verdict, ECF No. 249.  Arciero discharged Dubin and retained new counsel.  In September 2015, the court sentenced Arciero to 172 months of imprisonment and 5 years of supervised release for each crime, with the terms running concurrently, and a $400 special assessment.  *See* Judgment, ECF No. 281.

Arciero appealed.  *See* Notice of Appeal, ECF No. 284. On March 3, 2017, the Ninth Circuit affirmed in a memorandum decision.  *See* ECF No. 307.

On March 12, 2018, Arciero timely filed the present motion under § 2255.  *See* ECF No. 309.

Arciero claims that her trial counsel, Dubin, was ineffective in a number of ways.  First, Arciero asserts that Dubin was ineffective in failing to advise her not to testify at a pretrial bail revocation hearing.  She argues that competent counsel would have emphasized the obstruction of justice sentencing consequences of doing so in the event the court found her testimony lacked credibility, which it did.

Second, Arciero asserts that Dubin was ineffective in filing motions supported by Arciero's declarations. She says that Dubin failed to advise her about the merits of the motions, the low likelihood of success, and the potential sentencing consequences.

Third, Arciero asserts that Dubin was ineffective in providing deficient advice with respect to going to trial and asserting an entrapment defense.

Finally, Arciero asserts that Dubin was ineffective in failing to correctly advise her about the benefits of cooperation. She says that competent counsel would have had her cooperate with the Government and plead guilty.

This court held an evidentiary hearing over two days. On the first day, Dubin testified. *See* Transcript of Proceeding, ECF No. 338 ("Dubin Test. Day 1"). At a continued evidentiary hearing, both Arciero and Dubin testified. *See* ECF No. 349. This court does not have a transcript of the continued hearing, but refers to testimony on that day based on its notes and memory, citing to Dubin's testimony at the continued hearing as "Dubin Test. Day 2."

Government Exhibits 1 through 10 and Arciero Exhibits 1 through 4 were received in evidence for purposes of this motion. While the documents were admitted as exhibits, this court also

refers to their electronic filing identifiers for ease of reference.

**III.         FACTUAL BACKGROUND.**

At trial, Joleen Wood testified that Arciero was supplying her with drugs. Specifically, Wood testified that, on April 30, 2013, Arciero sent Wood a message that stated, "Hey girl. . . Gotta talk,2 u ASAP ok. . . Remember that thing we talked about. . . . Can 4 19." *See* Ex. 405; Jolene Wood Test. at 2-52 (Dec. 12, 2014), ECF No. 297, PageID # 2877. Wood said that this was Arciero's response to Wood's inquiry about a multi-pound methamphetamine sale; the message meant that Arciero could supply Wood with 4 pounds of methamphetamine at a price of $19,000 per pound. *See* Wood Test. at 2-53 and 2-67, PageID #s 2878 and 2892. Wood responded that she wanted only a pound of methamphetamine at that time. *See* Jolene Wood Test. at 3-38 (Dec. 16, 2014), ECF No. 298, PageID # 2997.

Wood was ultimately arrested and agreed to cooperate with law enforcement. An agent posing as Wood (or Wood at the direction of the agent) sent Arciero a message asking about the deal, "So what's up? How long more? Da guy not going wait dat long. He going split." Wood Test. at 3-97, PageID # 3056. Arciero agreed to deliver the methamphetamine to Wood's apartment. *Id.* at 3-39.

Arciero eventually sent Wood a message asking who was at Wood's apartment. The response was that only Wood was there. Arciero then sent a message stating, "I going come up alone but KK going stay down the road with the dog." Ryan Faulkner Test. at 4-37 (Dec. 17, 2014), ECF No. 299, PageID # 3167. Arciero and her sister Keala, aka KK, were arrested when they drove into the parking lot of Wood's apartment. Methamphetamine was found in the car. Amy Garon Test. at 4-113 to -14 (Dec. 17, 2014, ECF No. 299, PageID #s 3243-44.

After her arrest, Arciero initially cooperated with law enforcement. *See* Decl. of Malia Arciero, ECF No. 320-2, PageID # 4310. Believing that the Government had substantial evidence against her, she hoped that by cooperating she would get a lenient sentence. *See* Malia Arciero Test. (Dec. 4, 2018). As part of her cooperation, she took Government agents to where she had gotten the drugs at issue and told them about all her drug trafficking activity. *Id.*

In July 2013, Arciero hired Michael J. Green to represent her. *See* Decl. of Malia Arciero, ECF No. 320-2, PageID # 4309. Arciero says that Green did not explain anything to her; she reports having been confused with respect to his recommendation that she plead guilty. *Id.*, PageID # 4311. Arciero says Green advised her to continue cooperating with the Government. *See* Arciero Test.

While represented by Green, Arciero was offered a plea deal by the Government under which she could have avoided a potential 10-year mandatory minimum sentence.  *See* Arciero Test.  While Arciero thought the deal was for two years of imprisonment, there is no evidence other than Arciero's testimony that a two-year prison term was offered by the Government.  *See* Dubin Test. Day 1 at 11, ECF No. 338, PageID # 4361.  Arciero refused the plea deal and discharged Green because he was encouraging her to plead guilty.  Dubin understood that Arciero wanted an attorney who would go to trial.  *See id.* at 13, 66, ECF No. 338, PageID #s 4363, 4416.

A childhood friend of Arciero's gave Dubin's contact information to Arciero.  *See* Decl. of Malia Arciero, ECF No. 320-2, PageID # 4309; Dubin Test. Day 1 at 65, ECF No. 338, PageID # 4415.  On November 25, 2013, Green withdrew as Arciero's attorney and Dubin substituted in as her counsel.  *See* Stipulation and Order Re: Withdrawal and Substitution of Counsel for Defendant Malia Arciero, ECF No. 28.

Arciero told Dubin that she was innocent, that she was dissatisfied with Green, and that she wanted to go to trial.  *See* Dubin Test. Day 2.  She told Dubin she was actually the victim of a sexual assault by the case agent.  *See* Dubin Test. Day 1 at 54, 65-66, ECF No. 338, PageID #s 4404, 4415-16.  Arciero described the agent's penis in considerable detail.  Dubin believed the

allegations, which Arciero repeated numerous times during the course of Dubin's representation of her. *Id.* at 54, 68, PageID #s 4404, 4418.

In Dubin, Arciero had an attorney who had a low opinion of many aspects of the criminal justice system. Dubin's views may have sprung from his observations of how his clients were treated, but possibly, Dubin's views were influenced by what he says was his wrongful conviction of tax crimes that he describes the IRS as belatedly recognizing that he should not have been charged with. *See* Dubin Test. Day 1 at 46-47, ECF No. 338, PageID # 4396-97.

Arciero says that while Green had wanted her to plead guilty, Dubin was confident that he could get the charges dropped. *See* Decl. of Malia Arciero, ECF No. 320-2, PageID # 4311; Declaration of Gary Victor Dubin, ECF No. 319-4, PageID # 4124. For his part, Dubin says that he fully explained to Arciero the risks of not pleading guilty and of going to trial. Dubin says Arciero was adamant about not pleading guilty. *See* Dubin Decl., ECF No. 319-4, PageID # 4124; Dubin Test. Day 1 at 11, ECF No. 338, PageID #s 4358-61. Dubin's declaration is consistent with an email Dubin sent to William Shipley, the attorney for Arciero's sister. Dubin emailed:

> I talked with Malia this evening, explaining
> to her everything that Mike [Green] and you
> told me today, and especially the many risks

7

> involved in each of her present alternative
> choices.
>
> . . . .
>
> Malia refuses to agree to the Information and
> to enter a guilty plea.  Her decision she
> says is final.
>
> She intends to fight the charges all the way
> and my law firm intends to do the same for
> her.

Govt. Ex. 3, ECF No. 319-4, PageID # 4134.

On October 30, 2013, Arciero was released from custody
on an unsecured bond of $25,000.  *See* ECF No. 12.  One of the
conditions of her pretrial release was that she refrain from
using illicit drugs and that she submit to random drug tests.
*Id.*, *see also* Order Setting Conditions of Release, ECF No. 15.

On February 20, 2014, Alison G.K. Thom, Senior U.S.
Pretrial Services Officer, informed the court that Arciero had
violated the terms and conditions of her pretrial release by
submitting a urine specimen on January 27, 2014, that tested
positive for methamphetamine.  *See* ECF No. 49.  Thom asked that
the court issue an order to show cause why Arciero's pretrial
release should not be revoked.  *Id.*; Arciero Decl., PageID # 4312
(indicating that Arciero had failed a drug test in January 2014).

On March 28 and 31, 2014, and April 1, 2014, the
magistrate judge held hearings with respect to the order to show
cause why Arciero's pretrial release should not be revoked.  *See*
ECF Nos. 61-63.  On March 31, 2014, Arciero, represented by

Dubin, testified about the allegation that she had had a urine test on January 27, 2014, that tested positive for methamphetamine. Arciero now says that Dubin neglected to tell her why she was being called to testify. *See* Arciero Decl., PageID # 4312. She denied having used methamphetamine in January 2014. *See* ECF No. 83, PageID # 132. She claimed to have tested positive for methamphetamine only because she and her sister had been cleaning her mother's house when she cut her hand on a methamphetamine pipe with drug residue in it. *Id.*, PageID #s 150-152. Arciero had told this to Dubin in advance of the hearing. *See* Govt. Ex. 10.

On April 1, 2014, the magistrate judge determined that Arciero had used methamphetamine prior to the drug test on January 27, 2014, finding that Arciero's "explanation of how she was exposed to methamphetamine while house cleaning is not believable." ECF No. 84, PageID # 169. The magistrate judge nevertheless held the bail violation in abeyance.

Arciero also testified before the magistrate judge that she was concerned about being "set up" with a false drug test. She described having been forced to perform oral sex on the case agent. *See* Arciero test., ECF No. 83, PageID # 141 (describing giving him fellatio in the storage closet at the ICE headquarters). She said she viewed the agent as controlling her release status. *Id.*, PageID #s 144-45.

However, on May 23, 2014, the magistrate judge revoked Arciero's pretrial release after finding an additional violation of her release conditions. *See* ECF No. 87.

On August 18, 2014, Dubin filed three motions on behalf of Arciero. *See* Motion to Dismiss Based on Outrageous Government Conduct and/or Entrapment, ECF No. 105; Motion to Suppress Items Seized, ECF No. 106; and Motion to Suppress Coerced Involuntary Typed Confession, ECF No. 107. Each motion was supported by the same Declaration of Malia Arciero accusing the case agent of having sexually assaulted her. The declaration stated that the agent had become obsessed with Arciero when she was a stripper at a local club in 1998. ECF No. 105-1, PageID # 274. The declaration accused the agent of being in a drug-dealing partnership with someone and of arresting rival drug dealers. *Id.*, PageID # 274-75. Arciero says that she started an online escort service in 2001, and that the agent repeatedly called the escort service in 2005. *Id.*, PageID # 275.

According to Arciero, the agent routinely set people up. For example, Arciero said that Jessie Samuels had a drug dealer debt, and the case agent got Samuels busted. The agent's supposed drug partner allegedly told Arciero that the agent could get Samuels out if Arciero brought the drug partner two hand grenades, which Arciero said she did. *Id.*, PageID # 276.

Arciero says that, after she was arrested for the drugs in this case, the case agent told her that he had entrapped her because he knew she was an escort who would be able to give him lots of information. *Id.*, PageID # 279. According to Arciero, the agent told her that she would not have to go to the Federal Detention Center if she did what he wanted. *Id.*, PageID # 280. She said that the agent then typed up a false confession and told her to sign it, saying that she would go to prison if she refused. *Id.*, PageID # 281.

Arciero reports that, as soon as she became the agent's informant, he began sexual advances towards her. *Id.*, PageID # 282. He allegedly began "petting" her while she was a passenger in his car. *Id.* She says that, in late August 2013, she met the agent at ICE headquarters, where the agent forcibly took her to a storage room, handcuffed one of her hands, took out his penis, and forced her to perform oral sex. *Id.*, PageID #s 286-87. She said his penis was "two-toned" and described its length. *Id.*, PageID # 287. She said that the agent told her that he would kill her if she told anyone about what had happened and that he would rape her in the future. *Id.*

Dubin's recollection is that Arciero "steadfastly maintained that she was innocent." Declaration of Gary Victor Dubin, ECF No. 319-4, PageID # 4124. In November 2014, the month before trial started, Arciero's sister decided to plead guilty,

causing Ariciero to rethink whether she should also plead guilty. In an email to Dubin dated November 18, 2014, Arciero stated,

> Well, it is official.[] I called her earlier and she was with her lawyer and said she had signed the papers and changed her plea. She said it is not worth the risk of possibly doing 14 years in prison.[]
>
> I think this is going to greatly impact my case and now I am thinking it might be best to do the same before I get even more time than that.

Defendant's Ex. 1 at 8, ECF No. 320-1, PageID # 4291.

Dubin responded on November 19, 2014: "For you to do what? Plead guilty and accept a sentence of twenty years at the mercy of the court? Or maybe reduce your sentence by turning others in?" *Id.*

> Arciero wrote back on November 20, 2014:
>
> Didn't I all ready turn people in before all this for a reduced sentence? They were offering me 2 or 3 years before only.[] If we go to trial and lo[]se I will most likely get 20 years [] not if I was to change my plea now right? I am confused and my sister doing this to me has made me unsure about everything and extremely upset.... I just really do not want to go to trial...

Def. Ex. 1 at 8, ECF No. 320-1, PageID # 4291 (extra periods in original).

On November 19, 2014, in a separate email chain, Arciero wrote to Dubin:

> Is it really a good idea to continue at this point? I really do not want to waste any more of the court['] s time and I want to

12

change my plea because I do not think that
there is any way we are going to be able to
beat my charges successfully.  There is too
much evidence against me and now my sister is
against me and I really do not feel up to
going on the stand and giving testimony when
I know that I am pretty much guilty. . . .  I
really do not want to take a gamble at going
to trial and . . . the further we continue on
the worse it is going to be for me isn't it
if I decide to change my plea down the road?
I hope you understand and this decision has
been very hard and stressful for me to make,
but I feel like the odds are way too much
against me and I do not want to risk lo[]sing
the rest of my life when I could just lo[]se
a few years of my life!

Def. Ex. 1 at 15, ECF No. 320-1, PageID # 4298.

Dubin responded the same day, "Malia: No one to my

knowledge is offering you anything, especially after this

Friday."  *Id.*

The following day, November 20, 2014, Arciero replied:

Gary,

You don't need an offer to change your plea
though right? . . . . It is just that there
is so much evidence against me, that it seems
impossible to be able to convince any one of
my innocence at this point.  Maybe there was
governmental misconduct that happened after
the fact that I got busted with all those
drugs in my car, but that does not erase the
fact that they got me in the way they did. .
. .  I have been in here for so long, that I
do not mind doing a few years. . . . That
would be better than wasting so much of
everyone['] time while being stuck in this
hell hole.

*Id.*

13

According to Dubin, his responses to Arciero were attempts to control his client's emotions. *See* Dubin Test. Day 1 at 26, ECF No. 338, PageID # 4376. He told Arciero:

> When you retained me we had a sure-fire game plan. Nothing has really changed -- NOTHING -- except your emotional tantrums.
>
> You are at FDC because of your conduct according to Magistrate [Judge] Chang. Please blame no one else.
>
>         . . . .
>
> You cry that the situation is hopeless, when in truth it is not unless you continue to make it so, but it might be if your Sister testifies against you depending on what she makes up to avoid prison.
>
> I am in a drug trafficking jury trial for the past two weeks in a case that everyone said was impossible to win, yet after two days of deliberations the jury is still unable to make a decision and I was able to block crucial prosecution evidence from being seen by the jury. Win or lose, that example puts your bellyaching to shame. Tell that to my client in that case and he would laugh in your face.
>
>         . . . .
>
> You talk about wanting a plea deal. I have asked the prosecutor several times and each time the idea was brushed aside.
>
> Ask yourself this: why would they give you anything but the maximum sentence now that they believe they have your Sister to testify against you and to name others?
>
> The irony in all of this is that you mistakenly think that your situation is hopeless just because what has happened in

the past.  There is a new player in town
however: Me.

Def. Ex. 1 at 13-14, ECF No. 320-1, PageID # 4296-97.

Later the same day, Dubin wrote to Arciero to address
her three motions and her testimony about the alleged sexual
assault:

Remember, these evidentiary hearings are not
the actual trial, which begins in mid-
December.

These are your three motions, if denied you
lose nothing and if granted you win big time.

So what are you worried about?

You want to get out of your present hell
hole, don't you?

Then the best way to do that is to win and
not to run away from it all like a spoiled
brat.

Def. Ex. 1 at 12, ECF No. 320-1, PageID # 4295.  The evidentiary
hearings Dubin was referring to concerned Arciero's assertion
that she had been sexually assaulted by the case agent.

Arciero's sister's anticipated guilty plea and
potential testimony against Arciero led Dubin to contact the
Government to discuss a plea deal.  *See* Dubin Test. Day 1 at 49,
ECF No. 338, PageID # 4399.  Three days later, on November 24,
2014, AUSA Michael Kawahara offered Arciero a plea deal premised
on her pleading guilty to Count 1 (conspiracy to distribute and
to possess with intent to distribute fifty grams or more of
methamphetamine, its salts, isomers, and salts of its isomers) in

15

exchange for the dismissal of the remaining counts.  As part of the deal, Arciero would be required to sign a declaration recanting all her allegations of misconduct by the case agent. *See* Govt. Ex. 4, ECF No. 319-4, PageID #s 4136-59.

Arciero responded on November 26, 2014, "Fuck that. . . . I am not signing shit that makes me so angry that they would actually want me to lie. . .  What the hell is wrong with the system?  They are worse con artists th[a]n criminals. .  that[']s fucked up."  Govt. Ex. 5, ECF No. 319-4, PageID # 4161; *see also* Dubin Test. Day 1 at 76-77, 80, ECF No. 338, PageID #s 4426-27, 4430.

On November 26, 2014, Dubin told Arciero that the Government and the court were disappointed to hear that Arciero had rejected the plea offer and that she "would not sign the confession declaration because it was untrue."  Def. Ex. 1 at 3, ECF No. 320-1, PageID # 4286.  Dubin suggested that the Government should "come up with a better offer."  *Id.*

On November 28, 2014, Arciero wrote to Dubin, "Thank you and I feel like I should not let them win and it makes me even more mad to know that they actually want to cover up for that prick and now I understand why. . . .  Tell them I would sign their false document if they could promise me something under 3 years, but I doubt Kawahara has that kind of power."

Def. Ex. 1 at 3, ECF No. 320-1, PageID # 4286; *see also* Dubin
Test. Day 1 at 84, PageID #s 4434.

Dubin then told Arciero that he had asked AUSA Kawahara
about going back to "the purported original offer of two to three
years based on your prior cooperation," but was told that such a
deal was "impossible now because of all the alleged false things
you said against" the case agent. Def. Ex. 1 at 2, ECF No. 320-
1, PageID # 4285.

On December 1, 2014, Dubin told Arciero, "From your
emails, I can tell you are worn out over all of this. So let's
stop the paralysis of analysis. We go to trial! To win!" Def.
Ex. 1, ECF No. 320-1, PageID # 4288. On December 2, 2014,
Arciero responded to Dubin, "Thank you and let's do it and win!!!
Then we can make a movie out of this!!!" *Id.; see also* Dubin
Test. Day 1 at 77, PageID #s 4427.

Trial proceeded on December 11, 12, 16, and 17, 2014,
as well as January 6, and 7, 2015. ECF Nos. 219, 220, 226, 227,
243, 245. On January 8, 2015, after two days of deliberation,
the jury convicted Arciero of Counts 1 through 4 of the First
Superseding Indictment. *See* ECF No. 249.

On January 9, 2015, Dubin wrote to Arciero, telling her
to "please understand that this is only round one. Whereas the
system can always bury a criminal defendant skillfully and make
it look good, what was done to you in court was completely sloppy

and in clear violation of your constitutional rights."  Def.
Ex. 1 at 19, ECF No. 320-1, PageID # 4302.  Dubin informed
Arciero that he was moving for a new trial and appealing the
matter to the Ninth Circuit.  *Id.*  He told her, "You need to
understand that the alternative to pleading guilty was always a
trap.  Once the prosecution even offers a criminal defendant
three or four years, the district judge can give you any length
of sentence he or she pleases in the end upon sentencing."  *Id.*

On September 18, 2015, before she was sentenced, and in
the interest of avoiding a harsh sentence, Arciero retracted her
accusations against the case agent, stating that her accusations
against him were false.  *See* Declaration of Malia Arciero, ECF
No. 279-2, PageID # 1865.  She explained that her previous
accusations that the case agent "raped [her] and forced [her] to
give him oral sex" were "not correct and I therefore withdraw
them."  *Id.*, PageID # 1868.

At Arciero's sentencing hearing on September 21, 2015,
this judge imposed a two-level obstruction of justice enhancement
based on (1) Magistrate Judge Chang's determination that Arciero
was not credible in her explanation with respect to the January
2014 drug test; (2) this judge's own finding that Arciero had
lied to the court in saying she had no involvement with drug
dealing; and (3) Arciero's false accusations concerning the case
agent's conduct.  *See* ECF No. 289, PageID #s 2073, 2075.

Arciero now complains that Dubin told her that, with
enough money, he could beat the Government.  *Id.*, PageID #s 4311-
12.  She says that Dubin convinced her that he could get the
charges dropped by filing civil lawsuits based on allegations of
Government misconduct and that, even if the matter went to trial,
she could win.  *Id.*, PageID # 4312.  Arciero indisputably paid
Dubin a substantial amount.  Similarly indisputable is Dubin's
filing of a state-court civil complaint on Arciero's behalf with
respect to alleged Government misconduct.  This state-court
complaint accused the same case agent of the very conduct Arciero
had previously mentioned in federal filings.  *See* Govt. Ex. 7,
ECF No. 319-4, PageID # 4170.  The court takes judicial notice of
the indication in the state-court docket that Arciero voluntarily
dismissed the state-court action on August 12, 2015.  *See*
http://hoohiki.courts.hawaii.gov/#/search (so indicating when one
enters Case ID 1CC141000787, then clicks on "Document List").
Dubin says that Arciero was heavily involved in the drafting of
the state-court complaint, even asking that it be worded more
strongly.  Declaration of Gary Victor Dubin, ECF No. 319-4,
PageID # 4126. Dubin appears to have relied on what Arciero told
him.

Notwithstanding her post-trial retraction of her
allegations of sexual misconduct by the case agent, Arciero
submits a new declaration in support of her § 2255 motion that

says, "Throughout the course of my cooperation, many bad things happened to me. I was kidnapped, beaten, robbed and sexually exploited." *See* Motion of Declaration of Malia Arciero, ECF No. 320-2, PageID # 4310. It is not clear whether she is attempting to resurrect her accusations against the case agent. She did say at the § 2255 hearing that she was standing by her declaration retracting the allegations, but she appears reluctant to firmly close the door on her earlier account.

Arciero says, "Nothing was ever explained to me" by Dubin; "Dubin coerced me to drop my guilty plea and to go to trial." *Id.* at 4312. With respect to her testimony at the pretrial bail revocation hearing, Arciero says, "Without informing me or preparing me in any way, Mr. Dubin called me to testify without properly informing me on what - and why - I was testifying." *Id.* Arciero says she signed her declaration in support of the three motions without being told by Dubin what the trial strategy was because he said that the declaration would lead to the dropping of the charges. *Id.*, PageID # 4313. She said that she had "no idea what was going on" with respect to the outrageous Government conduct motion. *Id.*, PageID # 4314. Arciero says Dubin told her that, "since there was no fingerprints on the bag [of drugs], I had a good chance at winning." *Id.*

The live testimony that Dubin and Arciero provided in connection with the § 2255 motion was not as helpful as this court had hoped. Dubin was frequently nonresponsive, choosing to use his time on the witness stand to scold the attorney representing Arciero on her § 2255 motion for engaging in what Dubin saw as untoward innuendo, or to criticize the criminal justice system and various players in it.[1] Arciero was not examined as searchingly as would have been helpful. For the most part, this court relies on the written record.

## IV.    ANALYSIS.

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the

---

[1] By way of illustration, the court notes that Dubin complained that judges were too friendly to AUSAs. He cited as one piece of evidence the postponement of Arciero's trial for an entire day to allow attendance at AUSA Kawahara's retirement party. *See* Dubin Test. at 43, ECF No. 338, PageID # 4393 ("As I recall, the trial was postponed a day so that they could have a farewell party for the prosecuting attorney."). This judge, having presided over the trial, says that no trial postponement occurred relating to the AUSA's retirement party. It is difficult to imagine that the AUSA would have agreed to a retirement party in the middle of an ongoing trial, especially when the AUSA's retirement was not occurring until months after the trial. Jury deliberations began on January 7, 2015, and the AUSA who tried the case was still filing documents in this matter as of March 11, 2015. *See* ECF No. 264. The court's recollection is that the AUSA's retirement party occurred close to when he actually retired around March 2015. The court discusses this minor matter only because it very easily illustrates that Dubin's recollections were not always reliable.

sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ."  28 U.S.C. § 2255.  There are some general rules regarding what kinds of claims can and cannot be raised in a § 2255 petition.

A § 2255 petitioner may not invoke § 2255 "to relitigate questions which were or should have been raised on a direct appeal from the judgment of conviction."  *United States v. Marchese*, 341 F.2d 782, 789 (9ᵗʰ Cir. 1965).  For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal.  As the Ninth Circuit stated in *Olney v. United States*, 433 F.2d 161, 162 (9ᵗʰ Cir. 1970), "Having raised this point unsuccessfully on direct appeal, appellant cannot now seek to relitigate it as part of a petition under § 2255."

Similarly, a § 2255 petitioner is procedurally barred from raising an issue in a § 2255 petition if the issue could have been raised earlier, unless the § 2255 petitioner is actually innocent, *United States v. Guess*, 203 F.3d 1143, 1145 (9ᵗʰ Cir. 2000), or he or she can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. *United States v. Frady*, 456 U.S. 152, 167-68 (1982).  As the Supreme Court stated in *Frady*, "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing

his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *Id.*; *accord Davis v. United States*, 411 U.S. 233, 242 (1973). To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at [her] trial created a possibility of prejudice, but that they worked to [her] actual and substantial disadvantage, infecting [her] entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

Of course, ineffective assistance of counsel claims may be brought in a § 2255 proceeding, even if not asserted in a defendant's direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504-05 (2003). In so ruling, the Supreme Court recognized that *Frady*'s procedural bar should not apply in cases raising ineffective assistance of counsel claims in § 2255 motions because the record may not be properly developed to raise ineffective assistance of counsel claims on direct appeal. *Id.*

To establish ineffective assistance of counsel, a defendant has two separate burdens of proof. First, the defendant must show that his or her counsel's performance was deficient. Second, the defendant must show the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Turk v. White*, 116 F.3d 1264, 1265 (9th Cir. 1997) (stating that a defendant has two separate burdens of proof in an ineffective assistance of counsel claim: first, that

counsel's performance was deficient; second, the deficient performance prejudiced the defense); *Malivao v. United States*, 2018 WL 6834704, at *4 (D. Haw. Dec. 28, 2018) (stating that the defendant "bears the burden of proof as to both prongs of the *Strickland* analysis"). There is "a strong presumption" that counsel's conduct was reasonable and that counsel's representation did not fall below "an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688. Even if a petitioner can overcome the presumption of effectiveness, the petitioner must still demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction," judicial scrutiny of counsel's performance is highly deferential. *Id.* at 689.

> ### A. Arciero Does Not Show That Dubin Was Ineffective With Respect to Arciero's Testimony at the Pretrial Bail Revocation Hearing.

Arciero asserts that Dubin was ineffective in failing to advise her against testifying at the pretrial bail revocation hearing on March 31, 2014. According to Arciero, competent counsel would have emphasized the danger of getting an obstruction of justice sentencing enhancement in the event the court found her testimony to lack credibility, which it did.

Arciero fails to meet her burden of demonstrating that Dubin's advice with respect to testifying at the pretrial hearing fell below an objective standard of reasonableness.

At most, in her declaration filed on June 21, 2018, Arciero indicates that Dubin failed to tell her why she had to testify or to prepare her for her testimony. *See* ECF No. 320-2, PageID # 4312. Arciero's declaration is at least partially contradicted by her testimony at that pretrial hearing, where she did not appear as confused as she would now have this court believe she was. Arciero testified, for example, that she understood that she was being accused of having had a positive urine test on January 27, 2014. *See* Testimony of Malia Arciero at 3 (Mar. 31, 2014), ECF No. 83, PageID # 132. She connected that positive test with having cut her hand on a broken pipe that had drug residue in it. *Id.* at 22, PageID # 151. Dubin may have believed Arciero's explanation, just as he accepted her account about having been sexually assaulted by the case agent. If so, her testimony might not have given rise to concern on his part about an obstruction of justice enhancement. *See Strickland*, 466 U.S. at 691 ("the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions").

Even assuming Dubin should have advised Arciero about the risk of a sentencing enhancement, Arciero fails to meet her

burden of establishing prejudice.  At her sentencing hearing, this judge imposed the obstruction of justice enhancement to Arciero's offense level computation based on (1) Arciero's lie with respect to why she had failed the drug test, (2) Arciero's denial about having been involved with drug dealing, and (3) Arciero's lie with respect to the case agent's conduct. Arciero's testimony at the pretrial revocation hearing was not the sole basis of the obstruction of justice enhancement.  She does not show that she would have escaped that enhancement had Dubin warned her before she testified at the pretrial bail revocation hearing.

> **B.    Arciero Does Not Show That Dubin Was Ineffective in Filing Motions Supported by Arciero's Declaration.**

To the extent Arciero seeks relief under § 2255 on the ground that Dubin should not have filed motions based on her declaration concerning alleged sexual misconduct by the case agent, Arciero cannot establish that Dubin's conduct fell below an objective standard of reasonableness under prevailing professional norms.  Dubin testified that, based on Arciero's description of the case agent's penis, he believed that Arciero had been sexually assaulted by the case agent.  *See Strickland*, 466 U.S. at 691 ("the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions").  Another attorney may well have asked

more challenging questions of a client making such an accusation, but Arciero can hardly complain that her own attorney believed her.

Dubin may have been more inclined to believe Arciero's account than other attorneys might have been, given his own experience with the criminal justice system. But Arciero fails to meet her burden of demonstrating that Dubin's conduct fell below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688. If any complaint by her turns on his belief in what she told him, then she is very much like the proverbial child who, having killed his parents, seeks sympathy on the ground that he is now an orphan. And while that child may have committed murder in response to abuse, Arciero has recanted her allegations of sexual abuse.

To the extent Arciero is complaining that Dubin failed to advise her what chance she had of winning the motions or of the possible consequences of filing the motions, Arciero again falls short of showing that Dubin's conduct was deficient. At most, Arciero says that she signed her declaration in support of the three motions without knowing what Dubin's trial strategy was and while relying on his alleged assurances that the declaration would lead to the dropping of the charges. *See* Motion of Declaration of Malia Arciero, ECF No. 320-2, PageID # 4313. Dubin testified that he advised Arciero with respect to

testifying as to the motions, telling her that it would be difficult to succeed on the motions without her testimony.  *See* Dubin Test. Day 1, ECF No. 338, PageID # 4428.  Arciero's graphic description concerning the case agent led Dubin to believe that Arciero had actually been assaulted.  Dubin's reliance on Arciero had to guide his strategic decisions about motions.

In any event, Arciero demonstrates no prejudice arising out of the filing in 2014 of the three motions relating to alleged sexual misconduct by the case agent.  *See* ECF Nos. 105-1, 106-1, and 107-1.  Arciero had already testified about the sexual misconduct in her pretrial bail revocation hearing.  *See* ECF No. 83, PageID # 141.  The obstruction of justice enhancement Arciero received was justified by multiple lies she told.  *See* ECF No. 289, PageID #s 2073, 2075.

### C.  **Arciero Does Not Show That Dubin Was Ineffective With Respect to Asserting the Entrapment Defense**.

Arciero asserts that Dubin was ineffective in arguing entrapment as a defense.  This court submitted the entrapment issue to the jury after instructing it with respect to entrapment.  *See* ECF No. 246, PageID #s 1601-03 (jury instructions on entrapment).  While the defense was unsuccessful, this court instructed the jury on the defense only because there was some evidence going to the defense.  Under the circumstances, Arciero fails to meet her burden of showing that Dubin was deficient in asserting the defense.  Moreover, Arciero does not

explain how she was prejudiced by the submission of the entrapment issue to the jury.

### D. **Arciero Does Not Show That Dubin Was Ineffective in Advising Her to Go to Trial.**

Dubin says that Arciero "steadfastly maintained that she was innocent" and "adamantly refused any thought of pleading guilty." Dubin Decl., ECF No. 319-4, PageID # 4124. Dubin claims to have "fully investigated her case" and "fully discussed with her the risks of her pleading not guilty and going to trial." *Id.* Dubin recalls having the impression from Arciero that her sister was the guilty party. *Id.* Arciero, on the other hand says, "Nothing was ever explained to me." ECF No. 320-2, PageID # 4312. She says that "Dubin did not tell me that I would lose my cooperation by going to trial, nor did he inform me of the actual time I would be facing had I not gone to trial, or if I lost at trial. I was informed of nothing." *Id.*, PageID # 4315. Arciero is not credible on this point. In an email she sent Dubin on November 20, 2014, she notes, "If we go to trial and lo[]se I will most likely get 20 years." Def. Ex. 1 at 8, ECF No. 320-1, PageID # 4291. Arciero thus recognized that going to trial carried the risk of a very serious sentence.

Right before trial, Arciero had second thoughts about going to trial. On November 19, 2014, she emailed Dubin that there was a lot of evidence against her, stated that she did not feel up to testifying at trial, and wondered whether there was

any way to change her plea to guilty. *See* ECF No. 320-1, PageID # 4298. Dubin responded, "No one to my knowledge is offering you anything." *Id.* Nevertheless, Dubin appears to have continued to work with the AUSA prosecuting the case in an effort to get Arciero a plea deal.[2]

On November 25, 2014, AUSA Kawahara sent Dubin a proposed plea agreement that included a declaration for Arciero to sign admitting that she had lied about the case agent's supposed bad conduct. *See* ECF No. 310-4, PageID #s 4136-4159. Arciero rejected the plea offer, telling Dubin: "Fuck that. . . . I am not signing shit that makes me so angry that they would actually want me to lie. . . What the hell is wrong with the system? They are worse con artists th[a]n criminals. . that['] s fucked up." *See* Email from Malia Arciero to Gary V. Dubin (11/26/2014), Govt. Ex. 5, ECF No. 319-4, PageID # 4161; *see also* Dubin Test. Day 1 at 76-77, 80, ECF No. 338, PageID #s 4426-27, 4430. Two days later, she reiterated this position, telling Dubin: "Thank you and I feel like I should not let them win and it makes me even more mad to know that they actually want to cover up for that prick and now I understand why. . . . Tell them I would sign their false document if they could promise me something under 3 years, but I doubt Kawahara has that kind of

---

[2]Arciero claims that Dubin did not inform her of plea offers, but she does not identify any plea offer that Dubin failed to communicate to her. ECF No. 320-2, PageID # 4315.

power." Email from Malia Arciero to Gary V. Dubin (11/28/2014), ECF No. 320-1, PageID # 4286. These communications indicate that Arciero was committed to going to trial based on her allegation that the case agent had sexually assaulted her. Dubin took Arciero to trial based on her own allegations.

Dubin told Arciero on December 1, 2014, "From your emails, I can tell you are worn out over all of this. So let's stop the paralysis of analysis. We go to trial! To win!" Def. Ex. 1, ECF No. 320-1, PageID # 4288. On December 2, 2014, she responded to Dubin, "Thank you and let's do it and win!!! Then we can make a movie out of this!!!" *Id.*; *see also* Dubin Test. Day 1 at 77, PageID #s 4427.

Dubin testified that he had to manage Arciero's emotions. *See* Dubin Test. Day 1 at 26, ECF No. 338, PageID # 4376. He may have had more enthusiasm about trial than other attorneys, and he may have been a stronger advocate for trial than other attorneys. Still, Arciero, having told a tale of gross abuse by the case agent, was at least partially responsible for Dubin's attitude. Given what Arciero told Dubin, this court does not see Dubin's trial enthusiasm as falling below "an objective standard of reasonableness" under "prevailing professional norms." *Strickland*, 466 U.S. at 688.

In any event, Arciero does not show that she was prejudiced by Dubin's enthusiasm about going to trial. Arciero

rejected any plea offer, maintaining that she was innocent and that she had been sexually assaulted by the case agent. In other words, because Arciero does not show that, but for Dubin's advice, she would have accepted a plea deal that was actually offered to her, she cannot show that she was prejudiced by following that advice.

### E. Arciero Does Not Show that Dubin Was Ineffective with Respect to Advising Her about Cooperating.

Arciero asserts that Dubin was ineffective in failing to correctly advise her about the benefits of cooperating. For his part, Dubin says that he "fully investigated her case" and "fully discussed with her the risks of her pleading not guilty and going to trial." Dubin Decl., ECF No. 319-4, PageID # 4124. Arciero's own emails rejecting the November 2014 plea offer establish that Arciero steadfastly maintained that she was innocent and that the case agent had sexually assaulted her. *See* Email from Malia Arciero to Gary V. Dubin (11/26/2014) Govt. Ex. 5, ECF No. 319-4, PageID # 4161 ("Fuck that.... I am not signing shit that makes me so angry that they would actually want me to lie."); Email from Malia Arciero to Gary V. Dubin (11/28/2014), ECF No. 320-1, PageID # 4286 ("Tell them I would sign their false document if they could promise me something under 3 years").

Having insisted on going to trial, Arciero cannot now maintain a claim that Dubin's conduct fell below "an objective standard of reasonableness" under "prevailing professional

norms." *See Strickland*, 466 U.S. at 688; *see also id*. at 691
("the reasonableness of counsel's actions may be determined or
substantially influenced by the defendant's own statements or
actions").  In his live testimony, Dubin recognized that a judge
might have given her cooperation credit had she pled guilty, but
noted that that might not have occurred given her lies about the
case agent's conduct and her refusal to cooperate further.  Dubin
Test. Day 1 at 88, ECF No. 338, PageID # 4438.

     Moreover, Arciero fails to demonstrate any prejudice
arising out of Dubin's alleged failure to advise her about the
benefits of cooperating.  Arciero emailed Dubin on November 20,
2014, noting, "If we go to trial and lo[]se I will most likely
get 20 years."  Def. Ex. 1 at 8, ECF No. 320-1, PageID # 4291.
It therefore appears that, even if Dubin failed to explain the
benefits of cooperating, Arciero recognized the risks of going to
trial.

     At the end of the hearing on her § 2255 motion,
Arciero's counsel argued that, had she entered into a plea
agreement before March 31, 2014, when she lied to the magistrate
judge in her pretrial bail revocation hearing, her total offense
level would have been 29, instead of 34 (-2 for acceptance of
responsibility (U.S.S.G. § 3E1.1(a)), -1 for early acceptance of
responsibility (U.S.S.G. § 3E1.1(b)), and no +2 for obstructing
or impeding the administration of justice (U.S.S.G. § 3C1.1)).

33

This court declines to credit such speculation about prejudice in light of her rejection of the plea agreement offered to her while she was represented by Green.  Arciero sought out Dubin precisely because she did not want to plead guilty and instead wanted to go to trial.  *See* Dubin Test. Day 1 at 13, 66, ECF No. 338, PageID #s 4363, 4416.  There is no evidence establishing that, had Dubin advised her better about cooperating, she would have continued to cooperate and would have pled guilty before March 31, 2014.  The evidence shows that, from the time she retained Dubin in or about November 2013, Arciero maintained her innocence, claimed to have been sexually assaulted, and wanted to go to trial.

**V.      THE COURT DECLINES TO ISSUE A CERTIFICATE OF APPEALABILITY.**

The court declines to grant Arciero a certificate of appealability.  An appeal may not be taken to the court of appeals from a final order in a § 2255 proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(B).  The court shall issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of § 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484

(2000).  Reasonable jurists would not find this court's assessment of the merits of Arciero's constitutional claims debatable or wrong.

**VI.      CONCLUSION.**

For the foregoing reasons, the court denies Arciero's § 2255 motion and declines to issue her a certificate of appealability.

The Clerk of Court is directed to enter judgment in favor of the Government and against Arciero in Civil No. 18-00090 SOM and to close that case.



IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 28, 2019.


                        /s/ Susan Oki Mollway
                        Susan Oki Mollway
                        Chief United States District Judge


<u>United States of America v. Arciero</u>, Crim. No. 13-01036 SOM (01); Civ. No. 18-00090 SOM; ORDER DENYING DEFENDANT MALIA ARCIERO'S MOTION UNDER 28 U.S.C. § 2255 AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY