IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-001036 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION |
| | ) | REQUESTING REDUCTION OF |
| vs. | ) | SENTENCE PURSUANT TO 18 U.S.C. |
| | ) | § 3582(c)(1)(A)(i) |
| MALIA ARCIERO (01), | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION REQUESTING REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**I.        INTRODUCTION AND BACKGROUND.**

On January 8, 2015, after a six-day jury trial, Malia
Arciero was convicted of four drug-related crimes.  *See* Verdict,
ECF No. 249.  In September 2015, the court sentenced Arciero to
172 months of imprisonment and 5 years of supervised release for
each crime, with the terms running concurrently, and a $400
special assessment.  *See* Judgment, ECF No. 281.  It appears that
Arciero has been in custody since May 23, 2014 (about 72 months),
when her pretrial release was revoked.  *See* ECF No. 87.  Even if
she earns the maximum amount of good time credit, she has served
less than half of her total prison sentence.  Arciero has a
projected release date of August 10, 2026.  *See*
bop.gov/inmateloc/ (input Register Number 16101-022) (last
visited June 3, 2020).

On May 19, 2020, Arciero, through counsel, filed a
motion for compassionate release, arguing that her term of

imprisonment should be reduced to time served in light of the COVID-19 pandemic because she is "borderline diabetic[, and] has chronic sinus issues, wheezing, severe migraines and a history of seizures." *See* ECF No. 356-1, PageID # 4605. Arciero is being housed in FCI Victorville Medium II in California, *see id.*, which has had no reported cases of COVID-19. *See* bop.gov/coronavirus (last visited June 5, 2020). She seeks to serve her supervised release term in Atlanta, Georgia, where she intends to live with a woman she identifies by name but provides no other detail about. *See* ECF No. 361, PageID # 4677.

The court denies Arciero's motion because she has admittedly failed to exhaust her prison administrative remedies before filing the motion. *See id.*, PageID # *See* ECF No. 356-1, PageID # 4606 (stating in a document filed on May 19, 2020, and including no elaboration that her prison administrative remedies for compassionate relief are pending "and have not yet been exhausted"). Additionally, the court denies the motion because Arciero submits no support for her claimed medical conditions, and the court cannot determine whether the severity of her conditions justifies relief under 18 U.S.C. § 3582(c)(1)(A)(i).

## II.        ANALYSIS.

Arciero seeks a reduction of her sentence to time served pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), which allows defendants to move for sentence reductions based on "extraordinary and compelling reasons." Providing no medical documentation, Arciero says she is a borderline diabetic with chronic sinus issues, severe migraines, and a history of wheezing and seizures. She says that her medical conditions put her at risk of complications from COVID-19 if she catches the virus, including serious injury or death. *See* ECF No. 356-1, PageID # 4612.

Until the passage of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018), amending 18 U.S.C. § 3582(c)(1)(A), only the Bureau of Prisons could move for relief under § 3582(c)(1)(A). The Act now allows such a motion by a defendant:

> [T]he court, upon motion of the Director of
> the Bureau of Prisons, or upon motion of the
> defendant after the defendant has fully
> exhausted all administrative rights to appeal
> a failure of the Bureau of Prisons to bring a
> motion on the defendant's behalf or the lapse
> of 30 days from the receipt of such a request
> by the warden of the defendant's facility,
> whichever is earlier, may reduce the term of
> imprisonment (and may impose a term of
> probation or supervised release with or
> without conditions that does not exceed the
> unserved portion of the original term of
> imprisonment), after considering the factors
> set forth in section 3553(a) to the extent
> that they are applicable, if it finds that—

3

> (i) extraordinary and compelling reasons
> warrant such a reduction
>
>       . . . .
>
> and that such a reduction is consistent with
> applicable policy statements issued by the
> Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A)(i).

In other words, for the court to exercise its authority under § 3582(c)(1)(A) to reduce a sentence, it must (1) find that the defendant exhausted her administrative remedies or that 30 days have passed since she filed an administrative compassionate relief request; (2) find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. (As discussed below, the Sentencing Commission's policy statements are in need of updating given the First Step Act.)

## A.    Arciero Failed to Exhaust Her Prison Administrative Remedies.

Arciero provides no detail with respect to having submitted any prison administrative request for a compassionate release. Instead, she admits that she has failed to exhaust her prison administrative remedies with respect to such a request. Because such exhaustion is a statutory prerequisite to her motion under 18 U.S.C. § 3582(c)(l), the court denies the present motion.

Arciero argues that her noncompliance with the
exhaustion requirement should be excused in light of the COVID-19
pandemic because any delay puts her life in danger.  Citing *Ross
v. Blake*, 136 S. Ct. 1850, 1857 (2016), Arciero argues that
"[t]he Supreme Court has clearly held that the courts' power to
create exceptions to a statutory exhaustion requirement depends
on the language of the statute, and the language of 18 U.S.C.
§ 3582(c)(l)(A) fails to bar an exception."  ECF No. 356-1,
PageID # 4609.  This argument misreads *Ross*.

In *Ross*, a prisoner, Shaidon Blake, was allegedly
assaulted by two guards, Michael Ross and James Madigan.  135 S.
Ct. at 1855.  Blake reported the matter to another corrections
officer, who referred the matter to the prison's internal
investigation unit.  *Id.*  When Blake sued both guards for
excessive force and failure to take protective action in
violation of 42 U.S.C. § 1983, Ross moved to dismiss, arguing
that Blake had failed to exhaust prison administrative remedies
required by the Prison Litigation Reform Act of 1995.  Blake
argued that the reference to the internal investigation unit was
a substitute for the prison administrative remedy process.  *Id.*
The district court disagreed and dismissed Blake's complaint,
ruling that it could not proceed because Blake had failed to
exhaust his prison administrative remedies as required by the
Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a).  The

Fourth Circuit reversed, holding that "special circumstances" can constitute an "extra-textual exception" that excuses a failure to comply with administrative requirements. *Id.* at 1856. The Supreme Court vacated the Fourth Circuit's order, ruling that the statutory text and its history foreclosed the Fourth Circuit's "special circumstances" exception. *Id.* The Supreme Court then remanded the matter for a determination as to whether the prison grievance process was available to Blake. *Id.* at 1862.

The Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a), provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Ross* noted that inmates must exhaust "such administrative remedies as are available" before bringing suit to challenge prison conditions, but "need not exhaust remedies if they are not available." 136 S. Ct. at 1855.

*Ross* examined the language of § 1997e(a), determining that Congress had used mandatory language with respect to the exhaustion requirement. The Supreme Court stated that such mandatory language "means that a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Id.* The Supreme Court said that, unlike judge-made exhaustion doctrines, which may allow for equitable exceptions, mandatory

exhaustion requirements created by Congress cannot be excused by a judge. *Id.* at 1857. Judges must "honor Congress's choice" to require exhaustion. *Id.*

In the present case, the First Step Act allows inmates to file motions for compassionate relief "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." Arciero argues that this exhaustion language is permissive, allowing this court to create judicial exceptions to the exhaustion requirement because the language does not expressly bar exceptions. *See* ECF No. 356-1, PageID # 4609. However, the lack of an express bar to judge-made exceptions is not controlling. Under *Ross*, this court examines the plain language of the statute to determine whether administrative exhaustion is congressionally mandated. In *Ross*, the mandatory language was supported by the history of the statute. *Ross* held that, when exhaustion language is mandatory, exhaustion is required and courts may not create exceptions. Section 3582(c)(1)(A)(i) allows a motion for compassionate relief only "after" full exhaustion of a warden's decision on a request for compassionate relief, including appeals, "or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." § 3582(c)(1)(A)(i). Like the language at

7

issue in *Ross*, this language is mandatory; compassionate relief motions are allowed only "after" exhaustion.  This court must "honor Congress's choice" requiring exhaustion.  *Ross*, 136 S. Ct. at 1857; *see also United States v. Drummondo-Farias*, 2020 WL 2616119, at \*3 (D. Haw. May 19, 2020) (citing *Ross* in concluding that the court lacked authority to consider a compassionate release motion when the prisoner had not satisfied the mandatory statutory exhaustion requirement set forth in § 3582(c)(1)(A)(i)); *United States v. Oishi*, 2020 WL 2739609, at \*1 (D. Haw. May 8, 2020), *report and recommendation adopted,* 2020 WL 2736701 (D. Haw. May 26, 2020) (same).

While Arciero cites a number of cases in which judges have exercised discretion and created judge-made exceptions to the mandatory statutory exhaustion requirement in § 3582(c)(1)(A)(i), this court cannot square those decisions with the holding in *Ross*, which is binding on this court.  For example, this court is unpersuaded by Arciero's citation of *Hendricks v. Zenon*, 993 F.2d 664, 672 (9th Cir. 1993), for the proposition that courts may dispense with exhaustion requirements when "there are exceptional circumstances of peculiar urgency." That case predated *Ross* and involved 28 U.S.C. § 2254(b), which required exhaustion "or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner."

8

*Hendricks* thus involved a statute that expressly allowed courts to examine whether the equities excused exhaustion.

Moreover, *Hendricks* relied on *Granberry v. Greer*, 481 U.S. 129, 133 (1987), in which the Supreme Court noted that the exhaustion doctrine existed as a matter of comity long before § 2254 was codified.  *Granberry* noted that, before § 2254 was passed, courts required state remedies to be exhausted except in unusual circumstances.  *Id.* at 134.  The Court further noted that, under § 2254, courts should determine whether the interests of comity and federalism would be better served by addressing the merits or by requiring a series of additional state proceedings before the merits of a habeas claim under § 2254 were addressed.  *Id.*  By contrast, the compassionate release statute under which Arciero moves has no established history or statutory text allowing courts to dispense with exhaustion requirements in the interest of comity.

This court is similarly unpersuaded by case law indicating that the exhaustion requirement can be waived.  For example, *United States v. Jones*, 2020 WL 2331678, at *3 (D. Haw. May 11, 2020), stated that there are three bases for waiving exhaustion requirements: 1) when exhaustion would be futile because a decisionmaker is biased or has already determined an issue, or when requiring exhaustion would result in catastrophic health consequences; 2) when the administrative process is

incapable of granting relief; and 3) when pursuing the administrative process would subject a person to undue prejudice. While this court can readily understand the wisdom or equity of sometimes dispensing with statutorily mandated exhaustion, the reasoning of *Ross* teaches that this court lacks discretion to do that.  This court must "honor Congress's choice" to require exhaustion before prisoners file suit.  *Ross*, 136 S. Ct. at 1857.

Had the Supreme Court believed that statutorily mandated exhaustion was subject to equitable waiver, it could have easily stated that, rather than holding that courts lack discretion to ignore such requirements.  *See United States v. Alam*, – F.3d --, 2020 WL 2845694, at *3 (6th Cir. June 2, 2020) ("Nothing in § 3582(c)(1)(A) suggests the possibility of judge-made exceptions."); *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) (declining to remand a case to the district court when the inmate had not exhausted prison administrative remedies because any such remand would be futile given the need for courts to strictly comply with § 3582(c)(1)(A)'s exhaustion requirement); *Drummondo-Farias*, 2020 WL 2616119, at *4 (concluding that the statutorily mandated exhaustion requirement in § 3582(c)(1)(A)(i) is not waivable).

Because Arciero has failed to exhaust her prison administrative remedies, this court lacks the authority to grant the relief she requests.  This lack of authority does not mean

10

that she can never get relief.  It means instead that Arciero
must satisfy the claim-processing rules before she can proceed
with her request.

        The Government looks at the exhaustion requirement as
jurisdictional, pointing to the Ninth Circuit's interpretation of
Rule 35 of the Federal Rules of Criminal Procedure as
jurisdictional.  *See United States v. Aguilar-Reyes*, 653 F.3d
1053, 1055 (9th Cir. 2011).  Rule 35 provides, "Within 14 days
after sentencing, the court may correct a sentence that resulted
from arithmetical, technical, or other clear error."  Arciero is
asking this court to modify her sentence more than 14 days after
sentencing.  While courts generally "may not modify a term of
imprisonment once it has been imposed," 18 U.S.C. § 3582(c),
§ 3582(c)(1)(A)(i) provides an express exception to the 14-day
limitation.  *Aguilar-Reyes* itself recognized this court's power
to modify a sentence under 18 U.S.C. § 3582, the statute at issue
on this motion.  *See id.*

        The Supreme Court has recently reiterated that a
court's "jurisdiction" refers to "classes of cases a court may
entertain (subject matter jurisdiction) and the persons over whom
the court may exercise adjudicatory authority (personal
jurisdiction)."  *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843,
1848 (2019).  The Court additionally noted that Congress may
prescribe a court's jurisdiction through a jurisdictional

11

provision in a statute. *Id.* A requirement may also be jurisdictional when a long line of Supreme Court cases has so labeled the requirement without congressional objection. *Id.*

A claim-processing rule, on the other hand, is one that "promote[s] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* (quotation marks and citation omitted). Unlike jurisdictional requirements, which may be raised at any time in litigation and must be considered *sua sponte* by this court, a claim-processing rule is subject to waiver when a party waits too long to raise the issue. *Id.* at 1849.

The Supreme Court has provided guidance as to when a requirement is jurisdictional and when it is a mandatory claim-processing rule. In *Fort Bend*, the Court stated:

> While not demanding that Congress "incant magic words" to render a prescription jurisdictional, the Court has clarified that it would leave the ball in Congress' court: If the Legislature clearly states that a prescription counts as jurisdictional, then courts and litigants will be duly instructed and will not be left to wrestle with the issue; but when Congress does not rank a prescription as jurisdictional, courts should treat the restriction as nonjurisdictional in character.

*Id.* (alterations, quotation marks, and citations omitted).

Congress did not label the mandatory statutory exhaustion requirement in § 3582(c)(1)(A)(i) as jurisdictional. *Fort Bend* instructs that the requirement should therefore be

12

treated as nonjurisdictional.  *See Alam*, 2020 WL 2845694, at *2 (stating that "[a] prescription limits our subject-matter jurisdiction only if 'the Legislature clearly states that [the] prescription counts as jurisdictional'" (quoting *Fort Bend*, 139 S. Ct. at 1850), and reasoning that, because Congress did not state that the exhaustion requirement in § 3582(c)(1)(A) was jurisdictional, it is instead a mandatory claim-processing rule); *Connell*, 2020 WL 2315858, at *2–*3 (same).

A nonjurisdictional exhaustion requirement may be waived by the Government.  It has not been waived in this case. This court is obligated to enforce the statutory exhaustion requirement.  Having failed to exhaust, Arciero is not now entitled to the relief she seeks.

> **B.  Arciero Fails to Establish Extraordinary and Compelling Reasons Warranting a Sentence Reduction.**

Even if the court could overlook Arciero's lack of mandatory exhaustion, the court would not grant her motion because it fails to demonstrate extraordinary and compelling reasons warranting a reduction of her sentence.  *See* 18 U.S.C. § 3582(c)(1)(A)(i).

In enacting § 3582(c)(1)(A), Congress did not attempt to define "extraordinary and compelling."  *United States v. Marks*, 2020 WL 1908911, at *4 (W.D.N.Y. Apr. 20, 2020).  Instead, Congress authorized the United States Sentencing Commission to

13

determine what "extraordinary and compelling reasons" would
support the reduction of a sentence:

> The Commission, in promulgating general
> policy statements regarding the sentencing
> modification provisions in section
> 3582(c)(1)(A) of title 18, shall describe
> what should be considered extraordinary and
> compelling reasons for sentence reduction,
> including the criteria to be applied and a
> list of specific examples.  Rehabilitation of
> the defendant alone shall not be considered
> an extraordinary and compelling reason.

28 U.S.C. § 994(t).

> The Sentencing Commission then promulgated U.S.S.G.

§ 1B1.13, which states:

> Upon motion of the Director of the Bureau of
> Prisons under 18 U.S.C. § 3582(c)(1)(A), the
> court may reduce a term of imprisonment (and
> may impose a term of supervised release with
> or without conditions that does not exceed
> the unserved portion of the original term of
> imprisonment) if, after considering the
> factors set forth in 18 U.S.C. § 3553(a), to
> the extent that they are applicable, the
> court determines that–

> (1)(A) Extraordinary and compelling
> reasons warrant the reduction; or

> (B) The defendant (i) is at least 70
> years old; and (ii) has served at least 30
> years in prison pursuant to a sentence
> imposed under 18 U.S.C. § 3559(c) for the
> offense or offenses for which the defendant
> is imprisoned;

> (2) The defendant is not a danger to the
> safety of any other person or to the
> community, as provided in 18 U.S.C.
> § 3142(g); and

> (3) The reduction is consistent with
> this policy statement.

14

The commentary to § 1B1.13 of the Sentencing Guidelines discusses four "extraordinary and compelling reasons" justifying a reduction of a sentence: (1) the medical condition of the defendant; (2) the age of the defendant; (3) family circumstances requiring the defendant to perform caregiving functions; or (4) other reasons "[a]s determined by the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13 cmt. n.1.

The Sentencing Commission has not yet updated U.S.S.G. § 1B1.13 or its commentary to reflect the First Step Act's allowance of a defendant to move for relief.  It appears that the Sentencing Commission has not had the opportunity to revise the policy statement in response to the First Step Act, because, since the passage of the First Step Act, the Sentencing Commission has only had two voting commissioners. See, e.g., *United States v. Haynes*, 2020 WL 1941478, at *12 n.20 (E.D.N.Y. Apr. 22, 2020).  The guidelines cannot be amended until two more voting commissioners are appointed to constitute a quorum.  *Id.*

It is therefore not obvious that courts remain bound by what the Sentencing Commission has so far announced, especially because it is in considerable tension with the First Step Act. Read literally, the existing policy statement would only permit courts to determine whether an inmate fell into one of the three narrow categories of extraordinary and compelling circumstances identified by the Sentencing Commission.  The fourth, "catch-all"

15

provision only permits the Director of the Bureau of Prisons to determine whether other extraordinary and compelling reasons exist.  The policy statement would therefore severely limit the authority conferred on the courts by the First Step Act.

Because of this tension, "courts are divided on whether they may disregard the stated deference to the Director of the Bureau of Prisons in determining what 'other reasons' would qualify as extraordinary and compelling."  *Hirano v. United States*, 2020 WL 1861659, at *2 (D. Haw. Apr. 13, 2020).  There appears to be a growing consensus that "U.S.S.G. § 1B1.13 as currently written would not constrain [a court's] ability to find extraordinary and compelling reasons warranting a sentence reduction[.]"  *United States v. Vo.*, 2020 WL 2300101, at *2 (N.D. Cal. May 7, 2020); *see also, e.g., United States v. Etzel*, 2020 WL 2096423, at *3 (D. Or. May 1, 2020) ("The Court is persuaded by the reasoning of numerous other district courts and holds that it is not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction.").

As this judge ruled in *U.S. v. Maka*, 2020 WL 2544408, at *3 (D. Haw. May 19, 2020),

> Those decisions are persuasive to this court. Section 3582(c)(1)(A) states that a court's finding of extraordinary and compelling reasons must be consistent with the Sentencing Commission's guidance.  Before Congress enacted the First Step Act, the

16

> Sentencing Commission determined that the BOP Director had wide discretion in determining whether extraordinary and compelling reasons existed.  That guidance is consistent with a recognition that courts now can exercise the same discretion.

In *Maka*, this court rejected the argument that a prisoner's "vulnerability to COVID-19, standing alone, constitutes an extraordinary and compelling reason that justifies his immediate release," ruling that such an argument

> goes too far.  The compassionate relief statute cannot be a panacea for all of the problems facing prisons struggling to cope with COVID-19.  Not every vulnerable inmate is entitled to immediate release from prison. For instance, an inmate convicted of a violent crime who has just begun to serve a lengthy prison sentence may also be vulnerable to COVID-19, yet Congress may not have intended that such an inmate be released in light of the pandemic.

*Id.*  Nevertheless, this court recognized that,

> For some inmates, the pandemic may constitute an extraordinary and compelling reason that justifies a reduced sentence.  However, in determining whether extraordinary and compelling reasons justify a reduced sentence, Congress directed the courts to consider the factors set forth in 18 U.S.C. § 3553.  With its references to the circumstances of the offense and the history and characteristics of a defendant, § 3553 suggests that courts should consider factors such as the severity of the underlying crime and the time remaining on an inmate's sentence before granting a request for compassionate relief that is based on the coronavirus.

*Id.* at *4.

The CDC currently lists the following as people who are at high risk for a severe illness from COVID-19:

*People 65 years and older[;]

*People who live in a nursing home or long-term care facility[;]

People of all ages with underlying medical conditions, particularly if not well controlled, including:

*People with chronic lung disease or moderate to severe asthma[;]

*People who have serious heart conditions[;]

*People who are immunocompromised

Many conditions can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS, and prolonged use of corticosteroids and other immune weakening medications[;]

*People with severe obesity (body mass index [BMI] of 40 or higher)[;]

*People with diabetes[;]

*People with chronic kidney disease undergoing dialysis[; and]

*People with liver disease[.]

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 3, 2020).

In her motion, Arciero argues that her term of imprisonment should be reduced to time served in light of the COVID-19 pandemic because she is "borderline diabetic[, and] has

18

chronic sinus issues, wheezing, severe migraines and a history of seizures." *See* ECF No. 356-1, PageID # 4605.  Arciero submits no medical corroboration of any of these conditions.  Even if the court accepts that Arciero suffers from these conditions, the court is concerned that Arciero provides no detail concerning their severity.  On the present record, even putting aside Arciero's history of being untruthful to this court, *see* ECF No. 289, PageID #s 2073, 2075, Arciero's asserted medical conditions do not rise to the level identified by the CDC as putting her at risk of severe complications if she catches COVID-19.  *See* https://www.cdc.gov/coronavirus/2019-ncov/ need-extra-precautions/people-at-higher-risk.html (last visited June 3, 2020).  Being "borderline diabetic," for example, is not the same as actually having diabetes, one of the risks identified by the CDC.

In her Reply, Arciero expands her list of medical conditions to include chronic bronchitis and coughing, a painful lump in her breast, sinusitis, and anemia.  *See* ECF No. 361, PageID # 4673.[1]  It is unclear why these conditions were not identified earlier.  In any event, Arciero is attempting to raise new arguments for the first time in her Reply.  *See* Local Rule 7.2 ("Any argument raised for the first time in the reply shall

---

[1] Arciero filed this Reply brief *pro se* while represented by counsel.  Counsel adopted the filing, and the court considers it.

19

be disregarded.").  Even assuming Arciero has the conditions
identified in her Reply, she gives insufficient information about
their severity or the efficacy of any treatment she is receiving
to establish extraordinary and compelling reasons for a reduction
of her sentence in light of the pandemic.

Additionally, § 3582(c)(1)(A) requires this court to
consider the factors set forth in section 3553(a) before reducing
Arciero's sentence.  That section requires the court to impose a
"sentence sufficient, but not greater than necessary, to comply
with the purposes set forth in paragraph (2)" below:

> (1) the nature and circumstances of the
> offense and the history and characteristics
> of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the
> offense, to promote respect for the law, and
> to provide just punishment for the offense;
>     (B) to afford adequate deterrence to
> criminal conduct;
>     (C) to protect the public from further
> crimes of the defendant; and
>     (D) to provide the defendant with needed
> educational or vocational training, medical
> care, or other correctional treatment in the
> most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing
> range established for--
>     (A) the applicable category of offense
> committed by the applicable category of
> defendant as set forth in the guidelines--
> (i) issued by the Sentencing Commission
> pursuant to section 994(a)(1) of title 28,
> United States Code, subject to any amendments
> made to such guidelines by act of Congress
> (regardless of whether such amendments have

yet to be incorporated by the Sentencing
Commission into amendments issued under
section 994(p) of title 28); and
(ii) that, except as provided in section
3742(g), are in effect on the date the
defendant is sentenced; or
  (B) in the case of a violation of
probation or supervised release, the
applicable guidelines or policy statements
issued by the Sentencing Commission pursuant
to section 994(a)(3) of title 28, United
States Code, taking into account any
amendments made to such guidelines or policy
statements by act of Congress (regardless of
whether such amendments have yet to be
incorporated by the Sentencing Commission
into amendments issued under section 994(p)
of title 28);

(5) any pertinent policy statement--
  (A) issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28,
United States Code, subject to any amendments
made to such policy statement by act of
Congress (regardless of whether such
amendments have yet to be incorporated by the
Sentencing Commission into amendments issued
under section 994(p) of title 28); and
  (B) that, except as provided in section
3742(g), is in effect on the date the
defendant is sentenced.

(6) the need to avoid unwarranted sentence
disparities among defendants with similar
records who have been found guilty of similar
conduct; and

(7) the need to provide restitution to any
victims of the offense.

18 U.S.C.A. § 3553(a).

  The record indicates that Arciero is a nonviolent drug

offender who has served a substantial prison sentence, albeit

less than half of the sentence imposed.  However, she was

responsible for drug crimes involving pounds of "ice" and tried

to avoid her convictions by manufacturing evidence and repeatedly lying to this court.  Arciero is being housed at a facility with (as of June 5, 2020) no reported COVID-19 cases (although that could admittedly be the result of a lack of testing).  Critical to this court is Arciero's failure to present a detailed plan for herself if she is released early.  In her motion, she asks to live with her fiancé in Atlanta, Georgia.  However, after the Government pointed out that her fiancé might be a felon, she said in her Reply that she could live with Yolanda Hamilton in East Point, Georgia.  Without any further detail, Arciero says that her fiancé has "secured post-prison rehabilitation and employment" for her.  *See* ECF No. 361, PageID # 4677.  This court has no information on Ms. Hamilton and has to wonder what Mr. Arciero's real plan is.

Arciero says that, while incarcerated, she has only received one disciplinary sanction and has taken advantage of opportunities to rehabilitate herself, including receiving a horticulture license and dog training and nutritionist certifications.  *See* ECF No. 361, PageID # 4675.  Arciero raises these points for the first time in her Reply.  Even if the court considers them, they do not outweigh the severity of her crime and her long history of manipulation.

Having balanced the seriousness of Arciero's crimes, the amount of time remaining on her sentence, her behavior while

22

incarcerated, the totality of the medical information she has submitted, and the questions she raises with her evolving release plan, this court determines that Arciero has not shown extraordinary and compelling reasons for early release.

**III.      CONCLUSION.**

Arciero's motion for compassionate release is denied based on her failure to exhaust.  Even if she had exhausted, she does not, on the present record, show extraordinary and compelling reasons that she should now be released.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, June 5, 2020.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

United States v. Arciero, CRIM. NO. 13-001036 SOM; ORDER DENYING MOTION REQUESTING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)