IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-001036 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION FOR |
| | ) | RECONSIDERATION OF ORDER |
| vs. | ) | DENYING REDUCTION OF SENTENCE |
| | ) | PURSUANT TO 18 U.S.C. |
| MALIA ARCIERO (01), | ) | § 3582(c)(1)(A)(i) |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR RECONSIDERATION OF ORDER DENYING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**I.      INTRODUCTION.**

Malia Arciero seeks reconsideration of this court's June 5, 2020, Order Denying Motion Requesting Reduction of Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). Since that order was filed, four things have changed. First, Arciero has submitted a request for compassionate release to her warden, and more than 30 days have passed without a response. Second, the CDC has updated its guidance concerning COVID-19, stating that chronic lung diseases, including chronic bronchitis, put a person at increased risk of a severe illness from COVID-19. Third, Arciero has submitted evidence that she was diagnosed with bronchitis in 2014. Fourth, there are now COVID-19 cases at her prison. These changes do not justify reconsideration of this court's order. Accordingly, the court denies the motion for reconsideration.

II.        **Reconsideration Standard.**

Although the Federal Rules of Criminal Procedure do not expressly authorize the filing of motions for reconsideration, circuit courts, including the Ninth Circuit, have held that motions for reconsideration may be filed in criminal cases. *See United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003) ("As noted by the Second and Ninth Circuits, motions for reconsideration may be filed in criminal cases"); *United States v. Martin*, 226 F.3d 1042, 1047 n.7 (9th Cir. 2000) ("As the Second Circuit noted . . . , post-judgment motions for reconsideration may be filed in criminal cases"); *United States v. Amezcua*, 2015 WL 5165235, at *1 (E.D. Cal. Sept. 2, 2015) ("The Ninth Circuit allows parties to file motions for reconsideration in criminal cases, although the Federal Rules of Civil Procedure do not explicitly provide for such motions."), *aff'd*, 670 F. App'x 454 (9th Cir. 2016).

In ruling on motions for reconsideration in criminal cases, courts have relied on the standards governing Rule 59(e) and Rule 60(b) of the Federal Rules of Civil Procedure. *See Amezcua*, 2015 WL 5165235, at *1.

A Rule 59(e) motion must be filed within 28 days of the final order or judgment in issue and may only be granted when: "1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; 2) the moving party

2

presents newly discovered or previously unavailable evidence,
3) the motion is necessary to prevent manifest injustice, or
4) there is an intervening change in controlling law." *Hiken v.
Dep't of Def.*, 836 F.3d 1037, 1042 (9th Cir. 2016) (quotation
marks and citations omitted).  Rule 59(e) motions based on new
evidence may not be based on "matters already available or known
to the party submitting them as new evidence."  3 *Moore's
Manual—Fed. Practice & Procedure* § 24.82 (Lexis Advance 2020).
Because Arciero's reconsideration motion was filed on July 13,
2020, which was more than 28 days from this court's order denying
her earlier compassionate release motion, this court does not
treat the present reconsideration motion as falling under Rule
59.

　　　　Rule 60(b) of the Federal Rules of Civil Procedure
permits relief from final judgments, orders, or proceedings.
Such a motion may be granted on any one of six grounds:

> (1) mistake, inadvertence, surprise, or
> excusable neglect;
>
> (2) newly discovered evidence that, with
> reasonable diligence, could not have been
> discovered in time to move for a new trial
> under Rule 59(b);
>
> (3) fraud (whether previously called
> intrinsic or extrinsic), misrepresentation,
> or misconduct by an opposing party;
> (4) the judgment is void;
>
> (5) the judgment has been satisfied,
> released, or discharged; it is based on an

earlier judgment that has been reversed or
vacated; or applying it prospectively is no
longer equitable; or

(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

It is not entirely clear that the motion Arciero has
labeled as a reconsideration motion should be considered under
Rule 60(b), or whether it might instead be deemed an entirely new
motion.  Because the latter treatment is more favorable to
Arciero, this court treats the present motion as a new motion for
compassionate release, although, in ruling on this new motion,
this court takes into account everything said by the parties and
this court in connection with the earlier compassionate release
motion.

**III.     ANALYSIS.**

Arciero sought a reduction of her sentence to "time
served" pursuant to the First Step Act, 18 U.S.C.
§ 3582(c)(1)(A)(i), which allows defendants to move for sentence
reductions based on "extraordinary and compelling reasons."  On
June 5, 2020, this court denied her request, ruling that she had
not exhausted her prison administrative remedies, that she had
not demonstrated "extraordinary and compelling reasons"
warranting a sentence reduction, and that the balance of
§ 3553(a) factors did not support her release.

4

Arciero now argues that she has exhausted her prison administrative remedies, that the CDC guidelines have changed, that she has evidence that she has chronic bronchitis, and that her prison now has COVID-19 cases.  Her arguments fail to justify the relief she seeks.

### A.   The Government No Longer Argues that Arciero Has Failed to Exhaust Administrative Remedies.

Several days after this court issued its order, on or about June 8, 2020, Arciero submitted a compassionate release request to her warden.  *See* ECF No. 367-3, PageID # 4764-66.  She now argues that she has exhausted her prison administrative remedies, as required by 18 U.S.C. § 3582(c)(1).

The Government states that it now "believes that the Defendant has exhausted her administrative remedies."  ECF No. 371, PageID # 4790.

### B.   Arciero Fails to Establish Extraordinary and Compelling Reasons Warranting a Sentence Reduction.

Arciero continues to fail to demonstrate extraordinary and compelling reasons warranting a reduction of her sentence. *See* 18 U.S.C. § 3582(c)(1)(A)(i).  Arciero correctly notes that, after this court filed its order denying her original request for compassionate release, the CDC updated its guidelines with respect to COVID-19.  The CDC now recognizes that chronic lung diseases, including chronic bronchitis, increase a person's risk

of severe illness from COVID-19.  *See* https://www.cdc.gov/
coronavirus/2019-ncov/need-extra-precautions/people-with-medical-
conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronav
irus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk
.html#copd (last visited August 7, 2020).  "Chronic bronchitis is
an ongoing cough that lasts for several months and comes back two
or more years in a row." https://www.nhlbi.nih.gov/health-topics/
bronchitis (last visited August 7, 2020).  Acute bronchitis, on
the other hand, usually subsides after a few days or weeks.  *Id.*

Arciero claims to have chronic bronchitis.  In support,
she attaches medical records from a five-week period in 2014
establishing that she saw a doctor four times and was diagnosed
with unspecified bronchitis that is not designated in the medical
records as "chronic bronchitis."  On February 26, 2014, for
example she saw a doctor who diagnosed her with bronchitis.  *See*
ECF No. 367-2, PageID #s 4738-44.  On March 4, 2014, she returned
to the doctor's office and was again diagnosed with bronchitis.
*Id.*, PageID # 4745.  On March 20, 2014, she saw a doctor who
continued to diagnose her with bronchitis.  *Id.*, PageID #s 4754-
62.  The March 20, 2014, medical record states that Arciero has
"[n]o history of . . . chronic lung disease."  *Id.*, PageID
# 4258.  On March 30, 2014, she again saw a doctor, who again
diagnosed her with bronchitis.  *Id.*, PageID #s 4745-53.

There is no other medical evidence in the record supporting Arciero's claim that her bronchitis is chronic. Arciero asks this court to get her prison medical records from the Bureau of Prisons for her.  Arciero does not explain why she herself cannot obtain those records.  Numerous other defendants asking this judge for compassionate release have obtained their medical records from prison staff and have forwarded the records to their attorneys.  This court is not in the habit of obtaining records for parties.  The present record simply does not support Arciero's claim of chronic bronchitis, and Arciero fails to establish that she suffers from medical conditions that constitute extraordinary and compelling reasons warranting a sentence reduction.

Section 3582(c)(1)(A) requires this court to also consider the factors set forth in section 3553(a) in addressing a compassionate release motion.  That section requires the court to impose a "sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)" below:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>     (B) to afford adequate deterrence to criminal conduct;
>     (C) to protect the public from further crimes of the defendant; and

7

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; or
       (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);

(5) any pertinent policy statement--
       (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
       (B) that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

8

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

The record indicates that Arciero is a nonviolent drug offender who has served a substantial prison sentence, albeit less than half of the sentence imposed. The Sentence Monitoring Computation Data As of 03-06-2020 submitted by Arciero indicates that she has served 5 years, 10 months, and 11 days of her 172-month sentence. Even if she is eligible for good time credit, Arciero is asking to be excused from serving many years of her sentence. Arciero was responsible for drug crimes involving pounds of "ice," manufactured evidence, and lied to this court. Releasing her now would unduly minimize the seriousness of her actions.

When this court denied Arciero's earlier compassionate release request, the facility she was being housed at, Victorville Medium II FCI in California, had no reported COVID-19 cases. Victorville Medium II FCI has 1,115 inmates, with 925 at the FCI and 190 at the adjacent camp. https://www.bop.gov/locations/institutions/vvm/ (last visited August 10, 2020). It appears that Arciero is being housed in the satellite camp, a place where it is difficult to maintain social

9

distancing.  *See* ECF No. 367, PageID # 4726.  After this court
filed its earlier order denying compassionate release, 50 inmates
and 14 staff tested positive for COVID-19.  *See*
https://www.bop.gov/ coronavirus/ (last visited August 12, 2020).
Some of those individuals appear to have recovered, so that, as
of the morning of August 12, 2020, there were 4 active COVID-19
cases among inmates and 10 active COVID-19 cases among the
Victorville Medium II FCI staff members (who are probably not
reporting to work at the prison for now).  *Id.*  These numbers
certainly indicate that Arciero might become exposed to COVID-19
during her imprisonment.  However, Arciero does not show how she
would keep herself safe if released early.

        In her earlier motion, Arciero said she wanted to live
with her fiancé in Atlanta, Georgia.  The Government responded
that her fiancé might be a felon.  When released from prison and
on supervised release, Arciero will be subject to a condition
prohibiting her from associating with felons.  Arciero therefore
adjusted her proposal in the reply memorandum she submitted in
support of her earlier motion.  Her reply memorandum stated that
she could live with Yolanda Hamilton in East Point, Georgia.  *See*
ECF No. 361, PageID # 4677.  Ms. Hamilton may be Arciero's
fiance's daughter.  *See* ECF No. 367, PageID # 4725 (describing
Yolanda Hamilton as Arciero's "soon to be stepdaughter").
Arciero's papers relating to her compassionate release request do

not address the issue of whether her fiancé is indeed a felon
with whom she may not associate upon her release.  The court is
therefore concerned that, in suggesting that she reside with
Ms. Hamilton, Arciero is trying to arrange to see her fiancé, who
might claim to be visiting his daughter, rather than visiting
Arciero.

The court's concern about Arciero's release plan is
heightened by letters recently received from Arciero's father and
two sisters, all of whom live in Hawaii and all of whom appear to
believe that, if released, Arciero will live with one or more of
them in Hawaii.  *See* ECF No. 373, PageID # 4841.  At this point,
Arciero's release plan appears highly unsettled, and it is not at
all clear that she is interested in a release plan that will keep
her healthy and safe.

Having balanced the seriousness of Arciero's crimes,
the amount of time remaining on her sentence, her behavior while
incarcerated (including the many educational classes that she has
taken and the number of violations), the totality of the medical
information she has submitted, her potential exposure to COVID-19
at her prison, and the questions she raises with her evolving
release plan, this court determines that Arciero has not shown
extraordinary and compelling reasons warranting early release.

11

**IV.      CONCLUSION.**

          Arciero's recent motion seeking compassionate release
is denied.

          IT IS SO ORDERED.

          DATED: Honolulu, Hawaii, August 12, 2020.



                              /s/ Susan Oki Mollway

                              Susan Oki Mollway
                              United States District Judge


United States v. Arciero, CRIM. NO. 13-001036 SOM; ORDER DENYING MOTION FOR
RECONSIDERATION OF ORDER DENYING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C.
§ 3582(c)(1)(A)(i)