IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 13-001036 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING MOTION |
| | ) | REQUESTING REDUCTION OF |
| vs. | ) | SENTENCE PURSUANT TO 18 U.S.C. |
| | ) | § 3582(c)(1)(A)(i) |
| MALIA ARCIERO (01), | ) | |
| | ) | |
| DEFENDANT. | ) | |
| _____ | ) | |

**ORDER DENYING MOTION REQUESTING REDUCTION OF
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

**I.          INTRODUCTION AND BACKGROUND.**

On January 8, 2015, after a six-day jury trial, Malia Arciero was convicted of four drug-related crimes. *See* Verdict, ECF No. 249. In September 2015, the court sentenced Arciero to 172 months of imprisonment and 5 years of supervised release for each crime, with the terms running concurrently, and a $400 special assessment. *See* Judgment, ECF No. 281. It appears that Arciero has been in custody since May 23, 2014 (about 80 months), when her pretrial release was revoked. *See* ECF No. 87. Even if she earns the maximum amount of good time credit, she has served less than half of her total prison sentence. Arciero is being housed in FCI Victorville Medium II in California and has a projected release date of August 10, 2026. *See* www.bop.gov/inmateloc/ (input Register Number 16101-022) (last visited January 15, 2021).

Arciero has asked this court for compassionate release in light of the COVID-19 pandemic several times.  On June 5, 2020, this court denied her first request, reasoning that she had not exhausted her administrative remedies and failed to show extraordinary and compelling circumstances justifying her release.  *See* ECF No. 364.  Her motion argued without medical corroboration that she is "borderline diabetic[, and] has chronic sinus issues, wheezing, severe migraines and a history of seizures."  *See* ECF No. 356-1, PageID # 4605.  Given the lack of medical corroboration and any description of the severity of those conditions, the court ruled that, even had she exhausted her prison administrative remedies, her asserted medical conditions did not rise to the level identified by the CDC as putting her at risk of severe complications if she caught COVID-19.  *See* ECF No. 364, PageID # 4708.

In Arciero's Reply in support of her first motion, she expanded her list of medical conditions to include chronic bronchitis, coughing, a painful lump in her breast, sinusitis, and anemia.  *See* ECF No. 361, PageID # 4673.  Even assuming Arciero had the conditions identified in her Reply, the court ruled that she failed to provide sufficient information about their severity or the efficacy of any treatment she was receiving to establish extraordinary and compelling reasons for a reduction

2

of her sentence in light of the pandemic.  *See* ECF No. 364,

PageID # 4709.

The court then balanced the factors set forth in

section 3553(a):

> The record indicates that Arciero is a
> nonviolent drug offender who has served a
> substantial prison sentence, albeit less than
> half of the sentence imposed.  However, she
> was responsible for drug crimes involving
> pounds of "ice" and tried to avoid her
> convictions by manufacturing evidence and
> repeatedly lying to this court.  Arciero is
> being housed at a facility with (as of June
> 5, 2020) no reported COVID-19 cases (although
> that could admittedly be the result of a lack
> of testing).  Critical to this court is
> Arciero's failure to present a detailed plan
> for herself if she is released early.  In her
> motion, she asks to live with her fiancé in
> Atlanta, Georgia.  However, after the
> Government pointed out that her fiancé might
> be a felon, she said in her Reply that she
> could live with Yolanda Hamilton in East
> Point, Georgia.  Without any further detail,
> Arciero says that her fiancé has "secured
> post-prison rehabilitation and employment"
> for her.  *See* ECF No. 361, PageID # 4677.
> This court has no information on Ms. Hamilton
> and has to wonder what Mr. Arciero's real
> plan is.

> Arciero says that, while incarcerated,
> she has only received one disciplinary
> sanction and has taken advantage of
> opportunities to rehabilitate herself,
> including receiving a horticulture license
> and dog training and nutritionist
> certifications.  *See* ECF No. 361, PageID
> # 4675.  Arciero raises these points for the
> first time in her Reply.  Even if the court
> considers them, they do not outweigh the
> severity of her crime and her long history of
> manipulation.

*Id.*, PageID #s 4710-11.

Having balanced the seriousness of Arciero's crimes, the amount of time remaining on her sentence, her behavior while incarcerated, the totality of the medical information she had submitted, and her evolving release plan, the court determined that Arciero had not shown extraordinary and compelling reasons justifying her early release and therefore denied her request for compassionate release. *Id.*, PageID #s 4711-12.

Arciero sought reconsideration of the denial of her request for compassionate release, which this court treated as a new motion for compassionate release. *See* ECF No. 374, PageID # 4848. Four circumstances had changed since she had filed her original motion. First, Arciero had submitted a request for compassionate release to her warden, and more than 30 days had passed without a response. Second, the CDC had updated its guidance concerning COVID-19, stating that chronic lung diseases, including chronic bronchitis, put a person at increased risk of a severe illness from COVID-19. Third, Arciero had submitted evidence that she was diagnosed with bronchitis in 2014. Fourth, there were COVID-19 cases at her prison. On August 12, 2020, this court denied this second compassionate release request. *See* ECF No. 374.

In its order denying the second motion, the court ruled that Arciero had satisfied the prison exhaustion requirement.

4

*See id.*, PageID # 4849.  But the court rejected Arciero's characterization of her bronchitis as chronic bronchitis, a condition identified by the CDC as raising a person's risk of a severe case of COVID-19, as she had not submitted medical evidence corroborating her bronchitis as chronic, as opposed to simply repeated.  *See id.*, PageID #s 48450-51.

The court noted that Arciero was being housed in a satellite camp, a place where social distancing was difficult. Nevertheless, the court was unpersuaded that the 4 active cases of COVID-19 among the inmate population justified her early release.  *See id.*, PageID #s 4853-4.  The court again noted its concerns with respect to Arciero's changing release plan.  *See id.*, PageID # 4855.  Balancing all of the circumstances, the court determined that Arciero had failed to demonstrate extraordinary and compelling reasons warranting her early release.  *Id.*

Arciero then sought reconsideration of the denial of her second request for compassionate release.  In denying the reconsideration motion, this court noted that Arciero had failed to support her claim of chronic bronchitis with medical records. *See* ECF No. 376, PageID # 4863.  The court further noted that Arciero had failed to establish that she had asthma that was sufficiently severe to raise her risk of serious complications if she contracted COVID-19.  *Id.*, PageID # 4864.

5

On September 14, 2020, this court received a letter from Arciero indicating that she would be asking the BOP for copies of her 757-page medical records, stating, "As soon as I get my records, I will be sending all of the relevant medical information from it for my compassionate release."  ECF No. 377, PageID # 4865.

On December 2, 2020, Arciero filed her fourth and latest motion pertaining to compassionate release.  *See* ECF No. 383.  This motion still fails to submit medical documentation supporting the existence and severity of her claimed medical conditions.  Arciero did not submit her actual medical records, as she said she would do.  At most, her father sent a letter to the court stating, "Malia has had asthma and breathing problems from childhood. . . . She also suffers from seizures and other medical problems (nasal congestion, migraines, depression)."  ECF No. 385, PageID # 4879.

Victorville Medium II FCI, where Arciero is being held, currently houses 1,002 inmates, with 803 at the FCI and 199 at the adjacent camp, where Arciero is being housed. https://www.bop.gov/locations/institutions/vvm/ (last visited January 15, 2021).  Since the filing of Arciero's original motion, there appears to have been a COVID-19 outbreak at her facility.  As of the morning of January 14, 2021, 46 inmates and 14 staff have active cases of COVID-19, and 447 inmates and 39

6

staff have recovered from it.  *See*

https://www.bop.gov/coronavirus/ (last visited January 15, 2021).

While the court cannot tell how many of these individuals are in

the FCI and how many are in the camp, these numbers certainly

indicate that Arciero might become exposed to COVID-19 during her

imprisonment.

**II.      ANALYSIS.**

          This court has set forth the law governing

compassionate release motions in its previous orders in this

case.  That law is incorporated by reference.  Arciero's latest

compassionate release motion hardly adds to the arguments she

made in her previous motions, with the major difference being

that COVID-19 has become a bigger issue at her facility.  For the

reasons stated in the court's previous orders, the court

determines that Arciero has failed to establish any extraordinary

and compelling reason justifying compassionate release.

          There is no dispute that Arciero failed to seek

compassionate release from her warden with respect to the

increase in COVID-19 cases at her facility.  Even if the court

deems her earlier request to the warden for such relief to apply

to this motion, Arciero still fails to establish circumstances

justifying such relief.

The CDC currently lists the following conditions for people of any age as creating an increased risk of a severe illness from COVID-19:

*Cancer

*Chronic kidney disease

*COPD (chronic obstructive pulmonary disease)

*Down Syndrome

*heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

*Immunocompromised state (weakened immune system) from solid organ transplant

*Obesity (body mass index [BMI] of 30 kg/m2 or higher but < 40 kg/m2)

*Severe Obesity (BMI ≥ 40 kg/m2)

*Pregnancy

*Sickle cell disease

*Smoking

*Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited January 14, 2021).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

8

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Overweight (BMI > 25 kg/m2, but < 30 kg/m2)

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

Arciero's father says that she has had asthma and breathing problems since childhood.  *See* ECF No. 385, PageID # 4879.  Her Reply in support of her motion says that she has chronic bronchitis, a painful lump in her breast, sinusitis, serious migraines, a history of seizures, and is borderline diabetic.  Each of these conditions was raised in her previous motions, which were denied in part because Arciero had failed to establish the severity of the symptoms or the existence of the claimed condition.  For example, this court noted that Arciero had failed to establish that her bronchitis was chronic, rather than acute.  *See* ECF No. 374, PageID #s 4850-51.  The court noted

that, even if Arciero has asthma, that is not the same as having moderate to severe asthma, which is the severity recognized by the CDC as possibly increasing a person's risk of a severe case of COVID-19.  *See* ECF No. 376, PageID # 4864.  The court further noted that being "borderline diabetic" is not the same as actually having diabetes, one of the risks identified by the CDC.  *See* ECF No. 364, PageID # 4708.  With respect to the painful lump in her breast and her sinusitis, the court previously noted that she had provided insufficient information about their severity or the efficacy of any treatment.  *See id.*, PageID # 4709.  With respect to her claimed migraines and history of seizures, the court noted that Arciero failed to submit any medical corroboration of the conditions.  *See id.*, PageID # 4708.  In other words, despite being previously told in the previous orders that she had not established the requisite severity of her claimed medical conditions, Arciero made no attempt to do so in her latest motion.  Accordingly, for the reasons set forth in the court's previous orders, Arciero fails to establish any medical condition that raises her risk of a severe case of COVID-19.

Because the court recognizes the difficulties that a prisoner may have in obtaining medical records, the court does not want to induce Arciero to work harder at collecting medical records in the belief that, if only she can provide records, she will surely be granted compassionate release.  As the court has

10

noted, the medical records would need to show not just the existence of conditions in the past, but also their present severity.  Moreover, the medical conditions would need to outweigh this court's concerns that Arciero has served so little of her prison sentence and that Arciero's crimes, accompanied by deliberate attempts to deceive the court, were egregious.  That is, even with medical records, Arciero should not assume that release would be automatic.

Having expressed these concerns, this court turns to balancing the § 3553 factors.  Again, however, Arciero has failed to establish any change in circumstances, other than an increase in COVID-19 cases in her facility, that might justify her release.  Accordingly, for the reasons stated in the court's previous denials of her requests for compassionate release, the § 3553 factors do not favor Arciero's release.

This court has balanced the seriousness and circumstances of Arciero's crimes, the amount of time remaining on her sentence, her behavior while incarcerated, the totality of the medical information she has submitted, and the questions raised by her evolving release plan.  This court determines that, once again, Arciero has not shown extraordinary and compelling reasons for early release, or that early release would be consistent with the Sentencing Commission's policy statements.

## III.      **CONCLUSION.**

Arciero's latest motion for compassionate release is denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 15, 2021.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge


United States v. Arciero, CRIM. NO. 13-001036 SOM; ORDER DENYING MOTION REQUESTING REDUCTION OF SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)